CASE 96—INDICTMENT—DECEMBER 9, 1882.

# Lightfoot v. The Commonwealth.

### APPEAL FROM NICHOLAS CIRCUIT COURT.

1. Instruction No. 4 was properly modified, for if appellant had so· menaced and assaulted the deceased as to justify the belief on his. part that appellant intended to assault and kill him, or do him great bodily harm, then deceased had the right to defend himself, and if, in making such defense, he was killed by appellant, the latter was as much guilty as if deceased had made no effort to save his life.

2. This instruction, even if it was error, could not have misled the jury, for the next instruction directed the jury that; in determining whether the appellant had reasonable grounds to believe that deceased, at the time he was killed, was then and there about to shoot and kill, or do appellant great bodily harm, they are not confined to the circumstances of the killing, but they may and should take into consideration all the proof in the case.

3. Whether appellant shot deceased with a pistol, or beat him upon the head, producing death, does not appear, but it is alleged that he killed deceased with a pistol held in his hands, and that it was willfully and maliciously done. It therefore was a public offense, and there being no demurrer, the indictment must, after conviction,. be held sufficient.

4. A change of venue may be had to a county not adjoining the one in which the offense was committed, if made upon the motion of the accused and consented to by the attorney for the state. It was too late, after the trial and conviction, to raise the question.

5. The statements contained in the affidavit showing the necessity for a. change of venue are not jurisdictional facts.

ROSS & KENNEDY AND W. LINDSAY FOR APPELLANT.

1. The court gave an instruction with the modification that was not only in conflict with the law of self-defense, as set forth in the previous. instruction, but assumed a state of case not warranted by the proof. (Bohannon v. The Commonwealth, 8 Bush, 482; Terrell v. Same, 13 Ib., 257.)

2. The indictment is defective. (3 Heiskill, 150; 5 Caldwell, 650; 1 Duv., 140; White v. Commonwealth, 11 Bush, 178; 1 Met., 503.)

3. The Nicholas circuit court had no jurisdiction. A change of venue· was ordered from Rowan county, which does not adjoin Nicholas. (Sec. 1, art. 4, chap. 12, Gen. Stat.; sec. 276, Crim. Code.)

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

No brief.

Lightfoot v. The Commonwealth.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

On the 7th of March, in the year 1881, in a village called Cross Roads, in the county of Rowan, the appellant, M. F. Lightfoot, shot and killed Joseph McDermott, for which he was indicted, tried, and convicted, and his punishment fixed at confinement in the state prison for nine years. He has appealed from the judgment of conviction to this court.  The appellant and the deceased were both young men, and lived in the little village of Cross Roads.

Appellant was about twenty-two years of age, and the deceased had not attained his majority.  A bad feeling had existed between them for many months prior to the hostile meeting that terminated in McDermott's death.

The real origin of the difficulty seems not to have been developed by the proof, and all that is learned of the feud between them is, that each one of them, on almost every occasion where they happened to meet, was ready for an assault or a deadly combat, making threats to kill, and on more than one occasion McDermott drew his pistol, and at another time shot twice at the appellant, but in both instances, or in almost every instance, the proof conduces to show that the appellant was as anxious for the difficulty as the deceased.

It appears that the appellant was generally under the influence of liquor, and we have no doubt, from the facts of this record, that its effect upon a mind naturally excited at the appearance of his adversary, led to the tragedy resulting in the death of McDermott.

The testimony is very conflicting as to the acts and conduct of both parties for months prior to the killing, and the mind is impelled to the conclusion, after a careful reading

of the record, that the one was as much in fault as the other.

On the day of the fatal shooting, the appellant was in Pitman's saloon, and saw the deceased approaching the saloon, or coming in that direction. He remarked at the time: "*There* comes the d—d little son of a bitch; watch me step out and kill him;" or, let me go out and kill him. This was a few minutes before the shooting, and the substance of the language used is given by more than one witness.

The appellant left the saloon, and stepped on the platform in front of it. The deceased continued to cross the street, and came on to the same platform. The appellant then placed his hand on the shoulder of the deceased, and said to him: "'You ordered me out of the yard the other day,' and Joe (the deceased) said nothing, and defendant (appellant) repeated it, and added, 'I suppose it is all right, or you wouldn't have done it,' and he said 'Yes, he reckoned it was.'" The appellant then said, "I am as good a man as you," and Joe said, "I am as good a man as you." Judge Irving then ordered them off the platform on to the street, and the appellant told him "to get away from" before him, or he would lend him one." Appellant then stepped down into the public street, and said, "I am ready for him now." The defendant had cocked his pistol at the time this was said, and, according to the testimony of one of the witnesses for the Commonwealth, the deceased fired the first shot; but there is testimony conducing to show that the first fire was from the pistol of the appellant. The witness who says the deceased fired first, states that when he (the witness) first came up, the appellant had his hand in the

right pocket of his overcoat, and drew his pistol about half way out, and cocked it.

It is plain, we think, from the testimony, although the deceased was armed when he crossed the street, that his purpose was not to molest the appellant, and but for the aggressive movement of the appellant, and his fixed determination to bring about the difficulty, this killing would not have taken place.    The appellant was under the influence of liquor at the time, and the moment he saw his adversary, recollecting their previous troubles, he expressed his purpose to leave the saloon, and slay him.    It was not his fear of the deceased, or the belief that the latter would kill him, that caused him to announce this purpose, because, when he left the saloon, and the deceased came on to the platform, the appellant laid his hand upon deceased's shoulder, and reminded him of the insult he had offered him when requiring him to leave his father's yard.    If it was the purpose of the deceased to shoot the appellant, every opportunity was afforded him as he crossed the street, and if no such opportunity was presented, it clearly appears, from the conduct of the deceased, that he had no intention of assaulting the appellant, and, so far as the record shows, was doubtless not aware of the fact that appellant was in the saloon at the time he started from the opposite side. This case is unlike the case of Bohannon, reported in 8th Bush.    In that case the danger of the appellant losing his life became imminent whenever in the presence of his adversary.    The party slain by him was a desperate and dangerous man, and the accused in that case had the right to believe that his life was in danger whenever the deceased was near enough to inflict upon him bodily injury.    In the present case, if the appellant feared the taking of his life.

by McDermott, it was a fear originating from threats and hostile meetings between them, for which the one was as much in fault as the other. If the one was a desperate man, the other was also. . They stood upon the same footing, and we see no reason for applying the rule laid down in the case of Bohannon, by which Bohannon had the right to shoot his adversary in the casual meeting of each, because he believed, and had reasonable grounds to believe, from what had previously transpired between them, connected with the desperate character of the deceased, that he, Bohannon, would be killed by him whenever the opportunity was afforded him. Bohannon was a peaceable, quiet citizen, assaulted, threatened, and his life attempted to be taken by one as reckless of his own life as he was that of others.

Here both parties are in fault, the blame attaching with reference to the previous difficulties as much to the one as the other, and the proof showing that, at the time the attack was made, the appellant was seeking his adversary with a view of taking his life.

Instruction No. 4 was therefore properly modified; for if the accused, to use the language of the court, had so menaced and assaulted the deceased as to justify the belief on the part of the deceased that he intended to assault and kill him, or do him great bodily harm, then the deceased had the right to defend himself, and if, in making such defense, he was killed by the appellant, the latter was as much guilty as if the deceased had made no effort to save his life.

This instruction, if even erroneous, could not have misled the jury, for, in the next instruction, the jury was told for the defendant, "that in determining whether or not the defendant had reasonable grounds to believe that McDermott, at the time he was killed, was then and there about

Lightfoot v. The Commonwealth.

to shoot and kill, or do him (appellant) great bodily harm, they are not confined to the facts and circumstances proven to have transpired and existing at the time of the killing, but they may and should take into consideration all the proof in the case."

The court had permitted the testimony as to all their previous quarrels to go to the jury, and by this instruction gave to the accused the benefit of every threat and assault that had been made upon him by the deceased, and every other fact bearing upon the case from the origin of the hostile feeling towards each other, that the jury might be enabled to determine what facts influenced the appellant to believe, at the time he killed the deceased, that he was in danger of losing his own life, and the apparent necessity for taking the life of his adversary. And again instructed the jury, "that if they entertained a reasonable doubt of the guilt of the accused, or as to the existence of any fact necessary to establish guilt, they must acquit."

The appellant had not only the full benefit of the law applicable to his case, but the instructions were more favorable than the facts authorized. We perceive no error to the prejudice of the appellant in the instructions given or refused.

It is urged by counsel for the appellant that no conviction can be had because the indictment is defective, as it fails to allege the date at which the killing took place; and further, that it does not appear that the offense charged was committed before the finding of the indictment. It is insisted that, if the day on which the offense was committed is stated, and it is more than a year before the finding of the indictment, then the day of the death must be alleged, so that it may appear that the deceased did not survive the

injury more than a year and a day. It is true the indict--
ment fails to show when the killing took place, and the
indictment may have been for a shooting that took place
ten years before, and the deceased may have lived five
years after he was shot; yet there was no demurrer to the
indictment, and it is therefore unnecessary to determine
whether a demurrer, if filed, should have been sustained.

It is certain that the indictment charges a public offense.
It is alleged that the accused (naming him) is guilty of
willful murder, committed as follows: ''The said Matt. F.
Lightfoot, in the county aforesaid, did willfully, feloniously,
and with malice aforethought, kill and murder Joseph Mc-
Dermott, with a pistol, loaded with powder and leaden ball,
and other such substance, which he, the said Lightfoot,
then and there held in his hands,'' &c. This pleading is
not aptly drawn, as it alleges only that he killed the de-
ceased with a pistol, loaded with a leaden ball, held in his
hands. Whether he shot him or beat him over the head
with the pistol does not appear; but it is alleged that he
killed him, and killed him with a pistol held in his hands,
and that this killing was willfully and maliciously done; and
if so, it constituted a public offense, and there having been
no demurrer, the indictment must be held sufficient after
conviction.

It is further insisted that the circuit court of Nicholas
county had no jurisdiction to try this case. The offense
was committed in the county of Rowan, and a change of
venue granted to Nicholas county, which does not adjoin
Rowan. The change of venue to Nicholas was *on the mo-
tion of the accused, and consented to by the Commonwealth.*
It was evident, or at least the judge was of the opinion,
from the affidavits filed, that a fair and impartial trial could

not be obtained in the county of Rowan, and that the accused might have a fair trial, the case was sent, at the instance of the accused, the Commonwealth, by its attorney, consenting, to Nicholas county, and no objection was made to the venue until after the appellant had been convicted. There was no motion made to remand the case before trial, or objection heard until the verdict of guilty was rendered.

By the statute the change of venue shall be to some adjacent county, if objections are not taken and sustained to all the adjoining counties; and if so, the change to be made to the nearest county to which there is no valid objection. While the defense might object to the removal of the cause in any other manner than that provided by the statute; we perceive no objection to the jurisdiction of the court to try the case in a county selected by the defense, and to which the attorney for the commonwealth consents. This class of cases is embraced within the jurisdiction of the circuit court. The judge of the district, upon hearing the objections, *pro* and *con*, in the exercise of his discretion (not arbitrary), can determine, from all the proof before him, to which of the adjacent counties the case is to be sent, and whether the objections to these counties, if made, are sufficient to send it to some other adjacent county, and surely, when the accused desires to be tried in a particular county in the district, and no objection is made by the attorney for the state, there can be no question made as to the jurisdiction. The affidavits showing the necessity for a change of venue are not jurisdictional facts, and where a change of venue is granted, and the accused submits himself to the jurisdiction of the court to which it is sent, that is, goes into a trial without any objection, in either the court in

which the indictment was found or the court to which the venue was changed, it is too late, after verdict, to raise the question for the first time. It is true, regardless of the statute, the accused must be indicted and tried in the county where the offense was committed; but the law-making power has seen proper, with a view of securing to the accused a fair trial, to permit him to leave the county in which the charge against him is made, and availing himself of this right, he will not be allowed, after being tried in the county of his own selection, to say that the verdict against him is void, for want of jurisdiction in the court trying him. Consent cannot give jurisdiction; but the purpose of the statute being to secure an impartial trial, and authorizing a removal of the cause by the accused from the vicinage, the spirit, if not the letter, of the statute will sustain a verdict of guilty or of an acquittal, where the accused selects the county in which he is to be tried, although it may not be in a county adjacent to that in which the offense was committed. This court, in the case of Kennedy v. Commonwealth, has, in effect, decided this question, and although it may not have been material to so decide upon the issues involved in that case, it nevertheless adopts a correct interpretation of the statute under which changes of venue are granted. The case in 35 Wisconsin, relied on by counsel, makes the statement of fact, authorizing a change of venue, necessary in a petition to give jurisdiction. We are not disposed to follow it. Perceiving no error prejudicial to the substantial rights of the accused, the judgment below is affirmed.