## Moore v. Commonwealth.

(Decided April 28th, 1911.)

## Appeal from Graves Circuit Court.

1. Evidence—Stenographer's Notes.—The ordinary method of proving what a witness swore to on a former occasion is to introduce some person who heard the evidence when given by the witness and who remembers it, or remembers the substance of it. The statute relating to the appointment of official stenographers has not materially changed the practice in this respect.

2. Same.—A stenographer's transcript of evidence may be proven and read by him as evidence of what a deceased witness testified to on a former occasion, provided he testified that it was taken down accurately by him at the trial and is correctly transcribed; but other evidence is also receivable to substantiate or to rebut the fact that the said witness did so testify.

3. Same.—The right of a stenographer to use the transcript of his notes of evidence given by a witness upon a former occasion does not depend upon the record of the county court as to the appointment of a stenographer by that court for that occasion, or upon the fact that the county court record should show that there had been an examining trial at which the testimony was given.

4. Witnesses—Order of Testimony.—Sections 221, 222 and 223, of the Criminal Code of Practice, which require the Commonwealth to first introduce its evidence in support of the indictment, and that the defendant shall subsequently offer his evidence in support of his defense, do not provide a hard and fast rule applicable to all cases. The judge has a discretion to control the order of the testimony, and that discretion will not be disturbed unless it appears that the accused has been prejudiced by the change in the order of admitting the testimony.

5. Same—Impeachment of.—A witness who testified for the Commonwealth concerning a statement made to him by the accused at the time of his arrest, at which time the witness claims he had no pistol, may be impeached by showing that he had a pistol a very short time before, when he heard of the arrest.

6. Instructions.—Where the accused had on several occasions spoken of the deceased in language that showed a hostile feeling towards the deceased, and had at the time of the killing invited the deceased out to the sidewalk, where he immediately shot and killed

him, it was not improper for the court to instruct the jury that the defendant could not justify the killing on the grounds of self defense and apparent necessity if he sought out the deceased for the purpose of engaging in a difficulty with him and killing him.

SPEIGHT & DEAN and ROBBINS & THOMAS for appellant.

JAMES BREATHITT, Attorney-General, TOM B. McGREGOR, Assistant Attorney-General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In April, 1909, between eight and nine o'clock at night, the appellant, Dick Moore, shot and killed Jesse Cooley at Mayfield. Moore was indicted for murder, and his first trial resulted in a verdict convicting him of voluntary manslaughter, with a punishment of eight years' confinement in the penitentiary. The circuit court granted him a new trial, and, upon the second trial, he was again convicted of voluntary manslaughter, and his punishment was fixed at five years' confinement in the penitentiary; and from a judgment upon that verdict, he appeals.

The killing occurred near the Illinois Central Railroad depot, in front of what is known as the Depot Restaurant, which was conducted by R. E. Foster. Moore had been sitting at the counter in Foster's restaurant, eating a lunch, some fifteen or twenty minutes, when Cooley entered the restaurant and went behind the counter where Foster was standing. Foster and Moore were discussing the best method of making coffee, and when Cooley entered, he interrupted their conversation by calling upon Foster to serve him with an order of fish. Moore thereupon asked Cooley: "Where is your hook?" or words to that effect. Cooley responded by asking Moore what he had said. Moore repeated his question, and added to it by saying: "If you want to catch fish in the country you must use a steel hook, and if you want to catch them in the city you must use a silver hook," or words to that effect. These remarks seemed to anger Cooley, who was drinking, whereupon he went to where Moore was sitting and had some conversation with him about what Moore had just said. The counter was between them, and Moore was sitting upon a high stool, leaning against the counter. There is a controversy as to what happened

at this time. The weight of the testimony shows that Moore slapped Cooley's hat off, and that Cooley picked it up and struck Moore over the head with it. Moore says that Cooley knocked his own hat off in attempting to raise his hand over the counter, and that Cooley then picked up his hat and struck Moore over the face or head with it. The witnesses say (and this Moore admits) that Moore then said to Cooley: "Come outside and I will show you the meaning of a hook, or I will put a hook into you," or words to that effect. Moore immediately retreated to the sidewalk, while Cooley came from behind the counter and followed Moore on to the sidewalk, whereupon Moore shot Cooley throught the bowels, and he died within a short time thereafter.

There is considerable conflict in the testimony as to what happened on the sidewalk. Moore contends that Cooley advanced upon him, caught him by the hair of his head, and was handling him very roughly with the intention of doing him bodily harm, when he fired in self-defense. In this claim Moore is not supported by the other witnesses. He stands practically alone as to this claim. Several witnesses, however, say that Moore shot Cooley immediately upon his reaching the sidewalk, and before Cooley had even touched or threatened him.

A reversal is asked on account of the admission and rejection of testimony, and the instructions to the jury.

1. R. E. Foster testified at the examining trial held by the county judge. Foster's testimony was taken down in shorthand notes and afterwards written out by Cas B. Crossland, official stenographer of the First Judicial District. Foster died before the trial, and the court permitted the stenographer, over appellant's objection, to read Foster's testimony to the jury. The stenographer swore that Foster had been sworn by the judge before he gave his testimony, and that the testimony had been correctly taken and written out in full. The objection is based upon the ground that there is no record of the county court showing the appointment of Crossland as a stenographer to take down this testimony, or that there was an examining trial. The county court order-book shows that, on April 3d, the court adjourned until April 9th, for the purpose of allowing appellant to procure counsel; it contains nothing further upon the subject. We are of opinion that the circuit court properly permitted Foster's former evidence to be read to the jury. This

question was carefully and fully considered in Austin v. Commonwealth, 124 Ky., 55. The competency of Foster's testimony did not depend upon the record of the county court as to the appointment of a stenographer by that court for that occasion, or upon the fact that the county court's records should show that there had been an examining trial. The ordinary method of proving what a witness swore to on a former occasion is to introduce some person who heard the evidence when given by the witness, and who remembered it, or remembered the substance of it. Kean v. Commonwealth, 10 Bush, 190. The statute relating to the appointment of official court stenographers has not materially changed the practice in this respect. Austin v. Commonwealth, supra. And in concluding an interesting discussion of the question, the court, in the Austin case, used this language:

"We think the stenographer's bill may be proved and read by him as evidence of what a deceased witness may have testified on a former trial, when that fact may be proved, provided he testified that it was taken down accurately by him at the trial,and is correctly transcribed. But other evidence, that of any other competent witness who heard and remembers the substance of the deceased witness' testimony, is also receivable in the case to substantiate or to rebut the fact that the said witness did so testify. In this case the accused had the stenographer, on her cross-examination, to read her transcript of the evidence. This was also properly admitted for the reasons given above, as well as furnishing a test of the stenographer's memory and veracity."

2. It is further contended that the court erred in allowing Foster's deposition to be read after the appellant, Moore, had testified. Sections 221, 222 and 223, of the Criminal Code of Practice, provide for the conduct of a trial and the introduction of testimony. They require the Commonwealth to first introduce its evidence in support of the indictment; and that the defendant in the indictment shall subsequently offer his evidence in support of his defense. These Code provisions, however, do not provide a hard and fast rule applicable to all cases. In Williams v. Commonwealth, 90 Ky., 596, this court said it was well settled that the trial judge has a discretion in such a case, but that there should always be good cause for the introduction of testimony out of the regular order, and especially where injury may likely result

therefrom. The same practice was approved in Oldham v. Commonwealth, 22 Ky. Law Rep., 521. In the two cases last above cited, this court held that the accused persons had been prejudiced by the court allowing the Commonwealth to produce its testimony after the accused had testified; but it is apparent, from the face of those cases, that they stand upon an entirely different footing from the case at bar. In this case the Commonwealth announced, before Moore had testified, that it was through with its evidence, "except the record of the examining trial and anything that may be addressed to the court as to the propriety of this testimony." That testimony had been used upon the first trial, and its substance and contents were well known to appellant and his counsel. At the time the Commonwealth's Attorney made the announcement above quoted, appellant made no objection to the proposal to subsequently read Foster's testimony, but reserved the making of his objection until Foster's testimony was offered after Moore had testified. If appellant had signified his intention to object to this testimony when the Commonwealth had proposed to introduce it at some subsequent time, the Commonwealth could have met the objection by then reading Foster's testimony. Moreover, as above pointed out, it is clear beyond a doubt, that the reading of Foster's testimony out of the regular order did not prejudice appellant in the slightest, since he knew what the testimony was, and was as able to meet it at one time as at another. Furthermore, by the agreement of Moore and the attorney for the Commonwealth, this transcript of Foster's testimony had been used upon the trial of Moore's motion for bail before the circuit judge. There was no prejudicial error in this ruling of the circuit judge.

3. Shortly after the killing, Moore surrendered to Brand, the deputy sheriff, and delivered his pistol to Brand. The latter testified that Moore told him how he had shot Cooley; and, that in giving Brand the pistol Moore had called it "Old Betsey," and said "She never hung in the wool," or words to that effect. Moore, in turn, testified that Brand had used that expression about his own pistol, which Moore claims Brand showed him at the time of the surrender. Brand denied that he had used the language imputed to him, or that he had a pistol at that time. For the purpose of impeaching Brand,

appellant offered to show that, when Brand heard of the killing, a short time before the arrest, he then had a pistol in his pocket and exhibited it to the witness; but the court sustained an objection to this testimony. This testimony was improperly excluded. It may not have been worth much, but it should have been admitted for whatever value it may have had. We are of opinion, however, that it was of such a remote and collateral nature as not to substantially prejudice appellant's rights. The case rested in the main upon the action of the parties in the restaurant and on the sidewalk; and Brand was not a witness to any of those acts.

4. Finally, it is insisted that the court erred in giving instruction No. 6, which reads as follows:

"If, however, you shall believe from the evidence, beyond a reasonable doubt, that the defendant, Moore, armed with a deadly weapon sought out the deceased, Cooley, for the purpose of engaging in a difficulty with him, for the purpose of killing or injuring said Cooley, and with the intention of bringing on a difficulty for said purpose, used angry or insulting language to said Cooley, and that he did thereby bring on the difficulty in which said Cooley was shot and killed, and that the defendant willingly entered into the conflict with said Cooley, and willingly engaged in same up to the time he fired the fatal shot that killed the said Cooley, then, and in that event, the defendant can not justify said killing on the grounds of self-defense and apparent necessity, unless you shall believe from the evidence that defendant had abandoned in good faith his intention to so bring on the difficulty for said purpose and withdrew in good faith from the conflict before he shot the deceased."

No objection is taken to the other instructions, but it is insisted that the court should not have given this instruction, under the facts of this case, upon the idea that Moore had sought out Cooley for the purpose of engaging in a difficulty with him, because, as it is claimed, there is no evidence to sustain such an instruction. It appears, however, that, on three separate occasions prior to the killing, Moore had made remarks about Cooley, which showed a hostile feeling toward him. About two years before the killing they had had some trouble in Judge Crossland's office. Afterwards, upon seeing Cooley driving a buggy rather rapidly, Moore applied a vile epithet

to him and said that somebody would get him, and that it might be a little man as well as a big man who did it. Moore was a small man, and weighed less than a hundred pounds. Upon another occasion he stated, in conversation with a witness in a wagon yard that he would like to get a "crack" at Cooley. And, upon still another occasion Moore met one of the witnesses on the street, at night, and wanted the witness to go with him to the Depot Restaurant and help him "attend" to Cooley and Foster, because, as Moore claimed, they had put him out of the restaurant. These incidents, when taken in connection with Moore's admission that he invited Cooley, who was drinking and unarmed, out of the restaurant on to the sidewalk, where the killing immediately followed, were sufficient to justify the court in giving the instruction complained of.

Appellant has had two trials, and we are of opinion that he has been fairly tried.

Judgment affirmed.