## Hawley, Alias Wib Sturgill v. Commonwealth.

(Decided May 3, 1921).

### Appeal from Letcher Circuit Court.

1. Homicide—Instructions—Evidence.—Upon the trial of defendant for homicide the evidence was sufficient to establish the fact that accused started the trouble, and the court was justified under the evidence in giving the instruction complained of which limited and qualified the self-defense instruction.

2. Homicide—Instructions.—The law does not allow a man to create a bad or dangerous situation and then fight his way out.

DAVIS HAYS and D. D. FIELDS & DAY for appellant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On Christmas Eve, 1919, Wib Hawley shot and killed a boy named Delman Collier in Letcher county, for which Hawley was indicted for willful murder, but on a trial was found guilty of voluntary manslaughter and his punishment fixed at eight years' confinement in the state penitentiary.  He appeals.

He pleaded not guilty and insisted that he fired in self-defense.  From the evidence we learn that the homicide occurred at a country store late on December 24th while a considerable crowd was in and about the store. Both appellant and deceased were more or less under the influence of whiskey, but appellant says he had drunk only three drams and was not drunk or under the influence of the intoxicants.

The combatants were acquaintances but were not enemies nor had they ever had trouble. Appellant was more than fifty years of age while the deceased, Collier, was about 17. Each was armed with a pistol which he carried concealed on his person. Appellant had a 38 special, while the deceased had a 38 S. & W., the one being the more powerful gun, which made a louder report than the other.

Appellant was standing in the store room when a boy named Smith began calling him bad names, which angered appellant, but as Smith left the room nothing came of that, except Collier, who was at that time very near appellant, placed his hand on the shoulder of appellant in a friendly way and said to appellant: "Pay no attention to him (Smith) for he is drinking." Neither of the men had any visible weapons at the time. Collier had a cigarette in one hand and a match in the other at the time he laid his hand upon the shoulder of appellant. This appears to have angered appellant, for he immediately drew or offered to draw his pistol from a holster which he carried around his shoulder under his coat.

One of the witnesses when asked what appellant did when Collier placed his hand on appellant's shoulder said: "He (appellant) just reached around and come with his pistol." Both men drew their pistols and fired about the same time and both were wounded, but whether by the first shots or some subsequent one is not absolutely certain. As there was a slight difference in the volume of the report of the pistols some of the witnesses undertake to say that the louder report—the one made by the 38 special in the hands of appellant—was first while others say the small pistol was fired first.

As appellant's plea was self-defense he had the right to prove, if he could, that deceased was about to shoot and kill appellant. We have said in more than one case that if one without fault believes, and has reasonable grounds to believe, that another is about to take his life, or do him great bodily harm, and he has no other apparently safe means of securing himself from the impending danger, the one assailed may take the life of the other and is excusable on the grounds of self-defense and apparent necessity, although it may turn out that the appearances were false and that there was in fact no danger.

It is not necessary in order to excuse a homicide that there should be actual danger if there be apparent danger of death or great bodily harm to the slayer which he in good faith believes to exist. The test is, what was the danger as it appeared to the defendant at the moment he struck the blow or fired the shot which took the life of the other, and not what the danger actually was either in fact or in the judgment of the jury trying the case. Holloway v. Commonwealth, 11 Bush 344; Meredith v. Commonwealth, 18 B. Mon. 49; Coffman v. Commonwealth, 10 Bush 496; Munday v. Commonwealth, 81 Ky. 233.

But all this is taken away if the accused brought on the difficulty and made the actual or apparent danger to himself. The aggressor cannot claim self-defense. Johnson v. Commonwealth, 94 Ky. 578; Commonwealth v. Hourigan, 89 Ky. 313; Lightfoot v. Commonwealth, 80 Ky. 516.

Viewed in any light the killing of Collier appears inexcusable and no doubt was induced by the intoxicated condition of the two men.

The evidence is so conflicting that without seeing or hearing the witnesses or having a personal knowledge of the credibility of each, one does not know exactly what to conclude about how the homicide occurred. The jury was fully justified in finding the defendant guilty if it believed the witnesses for the Commonwealth, and the verdict cannot be assailed on the grounds that it is not supported by the evidence. The appellant relies for a reversal of the judgment chiefly upon the alleged error of the trial court in giving instruction No. 4, which is a qualification of the self-defense instruction. Instruction No. 4 told the jury that it could not find the defendant not guilty on the grounds of self-defense or defense of another if defendant willfuly and feloniously brought about the difficulty and made the danger to himself by making a demonstration or attempt to shoot Collier with a pistol with intention to kill Collier at a time when defendant was in no danger from Collier and did not in good faith believe himself in such danger. No complaint is made to the form of the instruction, but appellant insists that there was no evidence on which to base such an instruction. With this we cannot agree. The evidence of Mrs. Eva Sturgill tends to prove that appellant was the aggressor and sought to and did precipitate the difficulty

which resulted in the shooting and death of Collier. She was asked:

"Q. Did you hear any conversation between them in the store, if so tell the jury about it, all that occurred between them while you were in there? A.. When Delman Collier come in he just walked in the house and Wib Hawley says to him, says: 'Ain't you a dam pretty looking thing,' and the boy he looked around and says: 'Why I reckon I am,' and Delman walked on around on the other side of the store and Wib he looked over at him and says: 'I'll be God damned if your eyes don't look like buttermilk and it been churned twice.' Delman he stood there a little while and he says, 'Yes, God dam, your eyes look like they have been wanting buttermilk,' and he stood there a little short time and he went out and pulled the door to and didn't stay but a little while until he come back. Q. Which one went out? A. Delman went out and come back and says, 'Boys let's buy us something to eat,' and Wib says, 'God dam you, I have already eat,' and Delman says, 'Well, maybe some of the rest wants to eat,' and he says, 'I want to eat and maybe some of the other boys want to eat,' and Wib says, 'God dam you, if I wanted to eat I would want to eat with a better looking thing than you,' and I was afraid they were going to have trouble and I went in the other room where Willard was and asked him to let's go, and the boy got his tomatoes and set down to eat part of them and I got Willard and the boy raised up in the store and was just standing there and I got Willard started.''

All this happened before the difficulty started. The evidence of Dave Collier, who was the closest person to the combatants at the time the quarrel started, strongly supports the contention of the prosecution that appellant was the aggressor and precipitated the killing. This is the way he related the facts:

"Q. Mr. Collier, I want you to go ahead and tell this jury in your own way how that trouble arose and what occurred there? A. Well, Monroe Smith was jumping around trying to dance, such as that, and called Mr. Sturgill here a God dam s— a—, and Mr. Sturgill (Hawley) never paid any attention to it, just stood there, and he turned around to me Monroe did, and says: 'What do you call him?' and I says: 'I call him a gentleman.' Then he says to Delman Collier, he says: 'What do you call him?' and the

boy says: 'I call him a gentleman,' and Smith turned and walked back out of the house, back from where we were standing by the stove, and Mr. Sturgill says: 'I don't like for a man to throw off on me,' and the boy had a cigarette in his hand like that (indicating).' Q. The boy, who do you mean? A. The boy that got killed, Delman Collier. Delman had a cigarette in his fingers and a match in this hand and when he said that he didn't like for a man to throw off on him, Delman just reached out and laid his hand on his shoulder and says: 'Pay no attention to him he was drinking.' Q. Was he drinking? A. Yes, sir, he seemed to be. Q. What about Hawley, was he drunk or sober? A. He was pretty full. Q. The Collier boy that got killed, was he drinking, too? A. Yes, sir, seemed to pretty full of whiskey. Q. What happened when Collier told him to pay no attention to this fellow, he was drinking? A. He just reached around and come with his pistol. Q. Which one? A. Mr. Hawley here, grabbed hold of his pistol and the holster by his side, that way, and he says: 'God dam you,' I believe is the way he said it, 'I don't care for you if you are a boy,' and he says: 'Neither do I care for you,' and as he come the pistol fired. Q. Which one come with the pistol first? A. Mr. Hawley here. Q. When he come out with the pistol he fired? A. Yes, sir. Q. In what direction did he fire? A. I thought he shot under the boy's feet, and then the boy was shot through the knee. Q. That is under Collier's feet? A. Yes, sir. Q. Then what took place? A. The boy come with his and fired, too.''

All this plainly tends to prove that appellant was the aggressor; the precipitator of the trouble which resulted in Collier's death. If, in fact, appellant Hawley did by his acts and words provoke and bring about the fight he cannot be allowed to claim self-defense, even if at the time he fired the fatal shot he considered himself in danger of death from Collier, the one with whom he provoked the difficulty. The law does not allow a man to willfuly create a bad or dangerous situation and then fight his way out. Lightfoot v. Commonwealth, 80 Ky. 516.

While there is evidence which tends to show that Collier precipitated the difficulty there was sufficient evidence to the effect that appellant started the trouble, to fully warrant the trial court in giving instruction No. 4, which limited and qualified the self-defense instruction,

and there was no error prejudicial to the substantial rights of appellant in the giving of this instruction.

Upon the whole case we believe appellant had a fair trial and the judgment is affirmed.