## H. B. Hall, Jethro Hall and Dewey Hall v. Commonwealth.

(Decided March 13, 1925.)

### Appeal from Knott Circuit Court.

1. Homicide—Refusal to Direct Verdict of Acquittal of Codefendants Held Proper.—Refusal to direct verdict of acquittal of codefendants charged with murder and convicted of manslaughter held proper.

2. Homicide—Charge on Conspiracy Held Proper.—Where defendants acted in concert, charge upon conspiracy included in instruction on murder held not erroneous.

3. Homicide—Verdict of Guilty of Manslaughter Against Codefendants Held Not Against Evidence.—Verdict of guilty of manslaughter against codefendants held not flagrantly against evidence.

4. Homicide—Provocation Depriving Person of Right of Self-Defense, Defined.—Any wrongful or unlawful act which is reasonably calculated to lead to an affray or deadly conflict, and which provokes a difficulty, deprives person committing it of right of self-defense.

5. Homicide—Accused Held Not Deprived of Self-Defense by Merely Halting Deceased at Night.—That defendants, heavily armed, halted deceased and flashed a light in his face, although wrongful, was not sufficient in itself to deprive defendants of the right of self-defense in the affray resulting from such acts.

6. Homicide—Instruction Held Error as Depriving Accused of Right of Self-Defense.—The fact that heavily armed defendants halted deceased and flashed a light in his face did not deprive them of the right of self-defense, unless their action in doing those things was done in such a manner as reasonably to have led deceased to believe he was being feloniously attacked, and an instruction which omitted the latter condition was reversible error as denying the right of self-defense.

7. Homicide—Whether Unlawful Halting of Deceased at Night was Calculated to Lead to Affray Held for Jury.—Whether defendants' action in unlawfully halting deceased and flashing a light in his face while they were heavily armed was done in such a manner as was reasonably calculated to lead to an affray or deadly conflict held for the jury.

8. Homicide—Circumstances Precluding Defense of Self-Defense, Stated.—Defendants, who brought on a difficulty in which deceased lost his life, by assaulting him with deadly weapons, or by ordering him to halt and by throwing a flash light in his face at night in such manner as was reasonably calculated to lead to an affray, when it was not reasonably believed by defendants to be necessary, to protect themselves from immediate danger of death or great bodily harm, and thereby brought on the danger to themselves, were precluded to assert defense of self-defense.

JOHN CAUDILL, JOHN D. CARROLL and JOHN S. CARROLL for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Upon their trial, charged with the murder of Hawk Stumbo, the appellants, H. B. Hall, Jethro Hall, and Dewey Hall, were convicted of manslaughter, and their punishment fixed at confinement in the penitentiary for 21, three and two years, respectively.

H. B. and Jethro Hall are brothers, and Dewey is the son of the latter. H. C. Hall, a brother of H. B. and Jethro, was jointly indicted and tried with them, and acquitted.

For reversal of the judgment, appellants complain that (1) the court erred in refusing to direct the acquittal of Jethro and Dewey, (2) that the verdict against H. B. is flagrantly against the evidence, (3) that the court erred in the admission of evidence against the latter, (4) that the prosecuting attorney was guilty of misconduct in the closing argument, and (5) that instructions No. 1 and No. 7 are prejudicially erroneous.

The undisputed facts are these: On the night of the homicide, and some two or three hours theretofore, a sawmill located about 180 feet from the residence of H. B. Hall, and jointly owned by him, H. C., Jethro, and their father was destroyed by an explosion. H. B. Hall was awakened by the explosion, and, believing it was caused by dynamite, summoned H. C. and Jethro by 'phone. They arrived, accompanied by Dewey, in twenty or thirty minutes. In the meantime, H. B. had stopped a party of men passing his house and made inquiries of them relative to their whereabouts when the explosion occurred, and to ascertain what, if anything, they knew

796 KENTUCKY REPORTS.    [Vol. 207.

about it. Two of the party, after being questioned, passed on, but the third member thereof, Harry Hall, remained in and about the home of H. B. Hall, a distant relative, the rest of the night. Another party of four or five unidentified persons passed along the road shortly thereafter, and they were halted, questioned, and allowed to pass on in the same manner. At about 2:00 a. m. Stumbo and Andy Bates approached, riding mules, and they too were commanded to halt, which was followed almost immediately by five shots, fired in rapid succession, except that there was a slight interval between the third and fourth. Stumbo was killed almost instantly by one of the first three shots, which was fired from a rifle by H. B. Hall, and his body remained by the side of the road, and within less than 200 feet of where he was shot, until after daylight the next morning, when defendants claim first to have discovered that fact and learned of his death.

All four of the defendants admit that they were heavily armed at the time, and there is plenty of evidence to show, if indeed it is not admitted, that they were acting in concert and by agreement in stopping whoever passed along the road, in an effort to procure evidence as to who had blown up the sawmill.

All of the witnesses agree that H. B. and Jethro were together, and that one or the other of them commanded Stumbo and Bates to halt; that Bates halted, but that Stumbo's mule, as soon as the shooting began, ran off down the road. As to where H. C. and Dewey Hall were at the time, the evidence is conflicting, its preponderance being to the effect that Dewey was in the house, and H. C. at the barn. Bates, however, testified that immediately after the shooting, they came up the road from the direction from which the last two shots were fired, and it is conclusively established that these two shots were fired a short distance down the road, and that they were not and could not have been fired by either H. B. or Jethro.

H. B. and Jethro testified that when they commanded Stumbo and Bates to halt, the former threw a flashlight in the face of Stumbo to ascertain who he was, that Stumbo immediately fired at him twice with a pistol, that H. B. thereupon fired a single shot from the rifle, and that Jethro did not shoot at all. In this they are directly contradicted by Bates and Harry Hall, who testified that both H. B. and Jethro shot as soon as they commanded

Stumbo and Bates to halt, and that Stumbo did not fire at all.

H. B. and Jethro both state that the former fired directly at Stumbo, and at close range, but that no search whatever was made until the next morning to learn what had happened to him. A single bullet had hit decedent, powder-burning his clothing, passing through the fleshy part of his left arm a few inches below the elbow, and then through the body and heart, ranging upward and backward, and coming out a few inches back of the top of the right shoulder.

Decedent had a pistol when he was halted, and the holster was on his body the next morning, but his pistol was not produced in evidence, and although the defendants were the first persons along the road or near his body the next morning, all of them testify that the pistol, which if produced would have shown whether or not it had been fired, was not found.

All four of the defendants professed to believe the next day that decedent had been killed by a piece of steel thrown off by the explosion of the mill boiler, and Dewey stated, according to the evidence of two or three witnesses, in substance, that, "We fired four shots in the ground, but we did not kill the man."

Harry Hall stated that H. B. had a pistol and Jethro a high-power gun, but Bates and defendant's witnesses state they both had high-power guns. A number of witnesses who heard the shooting testified that the first two shots sounded like pistol shots, that these were followed immediately by a keener and presumably a rifle shot, and that there was a slight interval between the first two or three shots and two more that ended the shooting. From the character, location and range of Stumbo's wound, it is practically certain he did not fire these last two shots, and it is inferable at least that he did not fire at all.

That Stumbo had nothing to do with the mill explosion is now admitted by the defendants, and there is no direct contradiction of their testimony that they did not even know him, but if the Commonwealth's evidence be true, he was unlawfully attacked and killed by defendants, acting in concert, while traveling the public road, without knowing why or by whom, and without having fired a shot or done anything whatever to provoke an assault upon him. It never is unreasonable to infer that parties, acting in concert or singly, contemplated doing

just what they. did, and except for defendants' explanation of their purposes and denial that they knew decedent or planned to kill him, or did so until after he shot at H. B. Hall, there could be no possible basis for the contention that their actions, before, after, and at the time of the killing, as proven by the Commonwealth, did not warrant the inference that they killed Stumbo, maliciously and by design, because they believed he blew up the mill, or for some unexplained reason.

In this view of the testimony, it is quite clear that the court did not err in refusing to direct the acquittal of Jethro or Dewey, or in including in the first instruction upon murder a charge upon the question of a conspiracy as alleged in the indictment, and that there is no merit in the contention that the verdict against any of appellants is flagrantly against the evidence.

That the court erred in permitting one of the character witnesses for the Commonwealth to testify that the reputation of H. B. Hall for "peace and violence" was bad, and that the prosecuting attorney went outside of the record in referring to defendants' "broad experience in covering up this kind of crime" is admitted. As to whether these errors were prejudicial, about which counsel disagree, we need not decide, since they will not recur upon the new trial that must be ordered because of an error in instruction No. 7, which was, in our judgment, necessarily prejudicial.

This instruction reads:

"The court further instructs the jury that if they shall believe and find from the evidence, beyond a reasonable doubt, that the defendants H. B. Hall, H. C. Hall, Jethro Hall, and Dewey Hall, or either of them, brought on the difficulty in which the said Hawk Stumbo lost his life, by assaulting said Andy Bates and Hawk Stumbo, or either of them, with deadly weapons and ordering them to halt and holding them up in the night time, or by throwing a flashlight in their faces in the night time, when it was not necessary and when the defendants had no reasonable grounds to believe it was necessary to protect themselves from immediate danger of the infliction upon them of death or great bodily harm, or which reasonably appeared to them as about to be inflicted upon them by said Hawk Stumbo, or Andy Bates, that the defendants thereby brought on such danger to themselves, if they believe such danger existed,

then and in that event the jury cannot acquit the defendants on the grounds of self-defense or apparent necessity.''

Obviously the instruction as worded is open to the criticism that it annuls rather than qualifies the one on self-defense, since it seemingly at least deprives defendants of that, their only defense, if any of them threw a flashlight in decedent's face, and as H. B. Hall admitted he did.

That defendants, however lawful their purpose, acted unlawfully, even according to their own evidence, in arming themselves as for battle, halting decedent on the public road in the night time, and flashing a light in his face, is clear, but as to whether or not such action was reasonably calculated to lead to an affray was, we think, just as clearly a question of fact that should have been submitted to the jury.

The mere fact that defendants, heavily armed, halted decedent and flashed a light in his face, although wrongful, was not sufficient of and by itself to deprive them of the right of self-defense. To have had that effect it must have been done not only wrongfully but in such manner as reasonably to have led decedent to believe he was being feloniously attacked, since only if done in such manner would he have been justified in shooting at defendants in his apparently necessary self-defense, and if thus done, defendants clearly could not claim self-defense against his effort to defend himself.

In other words, the controlling factor is not defendants' motive for their wrongful act, but the effect it was reasonably calculated to have upon decedent. To hold otherwise would necessarily make one thus attacked the helpless victim of his assailants' secret intention, and relieve them of the natural consequence of their own wrongful act.

Upon this question there is much confusion in the decisions of this and other courts, but the rule supported by our more recent cases, the weight of authority generally, and as we believe by the better reasoning, is thus aptly stated in 30 C. J. 47:

"Any wrongful or unlawful act of accused, which is reasonably calculated to lead to an affray or deadly conflict, and which provokes the difficulty, is such aggression or provocation as deprives him of the right of self-defense.''

Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801; Jones v. Commonwealth, 186 Ky. 283, 216 S. W. 607, our most recent cases on the subject are to the same effect.

In lieu of instruction No. 7 given, the court, upon another trial, will give the following:

> "No. 7. The court further instructs the jury that if they shall believe and find from the evidence, beyond a reasonable doubt, that the defendants, H. B. Hall, H. C. Hall, Jethro Hall and Dewey Hall, or any of them, brought on the difficulty in which the said Hawk Stumbo lost his life, by assaulting said Andy Bates and Hawk Stumbo, or either of them, with deadly weapons, or by ordering them to halt and throwing a flashlight in their faces in the night time, and in such manner as was reasonably calculated to lead to an affray or deadly conflict, and when it was not necessary, or reasonably believed by the defendants to be necessary, to protect themselves or any of them from immediate danger of death or great bodily harm at the hands of Hawk Stumbo or Andy Bates, then the defendants, so doing, thereby brought on such danger to themselves, if any, and you cannot acquit such defendants upon the grounds of self-defense or apparent necessity, as set out in instruction No. 6."

Wherefore, the judgment is reversed, and the cause remanded for a new trial not inconsistent herewith.