## Doneghy v. Commonwealth.

(Decided April 24, 1925.)

### Appeal from Boyle Circuit Court.

1. Homicide—Self-Defense Instruction Properly Qualified, where there was Evidence that Defendant Invited Combat.—In prosecution for malicious shooting and wounding with intent to kill, where there was evidence that defendant invited victim out of car to fight, qualification of defendant's self-defense instruction to effect that, if jury believed such invitation was given defendant could not be excused on self-defense ground, held proper.

2. Homicide—Completed Trespass by Victim upon Defendant's Premises Held Not to Affect Qualification of Instruction on Self-Defense.—Though waterworks employe made mistake in removing defendant's father's water meter, and in altercation, defendant shot employe, self-defense instruction was properly qualified by addition that, if he invited combat, self-defense was unavailable, where trespass, if any, was completed before altercation arose.

3. Homicide—Defendant Held Not Relieved by Mistake of Victim in Removing Water Meter.—That waterworks employe, just prior

to altercation ending in his being shot and wounded by defendant, had removed latter's father's water meter, thinking, erroneously, that rent was unpaid, held not to operate to relieve defendant.

SANDERS E. CLAY for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant was indicted charged with malicious shooting and wounding Craig with a gun with the intention of killing him, although from such shooting and wounding he did not die. The indictment also embraced the charge that defendant had been previously convicted of manslaughter under an indictment for murder.

On his trial in this case he was found guilty and his punishment fixed at 14 years' imprisonment under the cumulative punishment statute.

Appellant is the son of Ed Doneghy, who lives in Danville, and is a patron of the Danville water works, having in front of his house a meter through which his house is furnished water by that company.

Craig, the wounded man, was an employee of the water company, and it was his duty to remove water meters and thereby shut off the supply of water when the water rent was not paid. Shortly before the shooting, Craig had been furnished by the officials of the water company a list of persons who had not paid their water rent, and directed either to collect the rent or remove the meters of such persons. On that list was the name of one Ed Graham, which Craig confused in some way with that of Ed Doneghy, and thereby thought that he had orders to remove the Doneghy meter. As a matter of fact, however, the Doneghy water rent had been paid. Craig went to the Doneghy house upon one or two occasions and was unable to find any one at home, and upon such occasions did not remove the water meter; but finally on the afternoon in question he went to the home and still being unable to get any one to answer, he proceeded to remove the water meter, which was out in front of the house in a grass plot between the curbing and the pavement. While he was removing it appellant, the son of Ed Doneghy, came out of the house and inquired what

he was doing, and was informed he was removing the water meter. Appellant said something to him about the water rent being paid, and they had some conversation about the matter. However, Craig proceeded to remove the meter and placed the same in the Ford truck which he had brought with him, and which was standing in the street near the curbing, and then got into the machine preparatory to driving away. About that time Ed Doneghy, appellant's father, who had been away from home, appeared upon the scene and told Craig that the water rent was paid, and invited him to go to the telephone in the house nearby and call up the office of the company and verify his statement. While the elder man and Craig were having this conversation, appellant placed his hand upon the door of the truck and, as Craig says, jerked it open, whereupon Craig closed the truck door and said to appellant that when he wanted that door opened he would open it himself. Craig testifies that appellant then stepped back and said, "God damn you get out and I'll fix you," while Ed Doneghy testifies that his son only concurred in his invitation to Craig to get out and go to the phone and call up the office.

However this may have been, Craig did get out of the car and took with him a wrench which he had been using in his work. The elder Doneghy got between the two in an effort to avoid a difficulty between them, having his back toward Craig and his face toward his son; the son had gotten out his pistol and Ed Doneghy was trying to get to it and take it from him, but before he could do so Monroe shot to the side or around him and shot Craig in the leg. After he got possession of the pistol from his son he discovered that the wrench or iron rod which was in the hands of Craig was just above or just over his shoulder, and he grabbed that with one hand and also took that weapon from Craig.

So far as this appeal is concerned the essential difference in the evidence of Craig and Ed Doneghy (appellant not testifying) is whether Monroe Doneghy merely invited Craig out of the machine to go to the telephone and ascertain from the office whether the rent had been paid, or whether he in effect invited him, after cursing him, to get out for the purpose of fighting.

The argument for appellant is that Craig was a trespasser, and that defendant was only undertaking to prevent a trespass by Craig upon his father's property, and therefore had the right to resort to such means, not

involving life or limb, as might be necessary to prevent the trespass; and that when he was attacked by the trespasser he should not on his trial for shooting him have the self-defense instruction qualified.

The court gave defendant a self-defense instruction, but appended to it this qualification, to-wit:

> "On the other hand if you believe from the evidence to the exclusion of a reasonable doubt, that the defendant when he did not believe or did not have reasonable grounds to believe that his life or person was in danger at the hands of said Craig, did first wilfully and voluntarily, while armed with a pistol, invite and challenge said Craig out of an automobile to fight, and in so doing make harm or danger to himself,"

the jury could not excuse defendant on the ground of self-defense.

It is clear that if the jury believed the statement of Craig that defendant cursed him and told him to get out of the automobile and he would fix him, it was equivalent to an invitation from appellant to Craig to get out of the machine and engage in combat, and a long line of decisions in this state have upheld similar qualifications of self-defense instructions where there was evidence showing that defendant had invited his adversary to combat, and had thereby begun the difficulty.

So far as the question of trespass is involved in this case it can have no effect upon that instruction, for all the evidence shows that the trespass, if any, had been completed before the difficulty began, although removal of the meter had not been finished before the conversation had begun between appellant and Craig. When the difficulty arose the water meter had been removed and placed in the truck and Craig himself was in the truck prepared to drive away.

The fact that Craig made a mistake in removing the water meter cannot operate to relieve the defendant of the odium of his own conduct.

Judgment affirmed.