# Commonwealth v. Ashcraft.

(Decided April 27, 1928.)

## Appeal from Madison Circuit Court.

1. Homicide.—Provoking acts on the part of the defendant, to deprive him of the right of self-defense in prosecution for murder, need not be such as would create right of self-defense on the part of the deceased had he slain defendant.

2. Homicide.—Where, in murder prosecution, evidence showed that defendant addressed deceased by opprobrious epithets and continued to advance towards him, thus provoking assault, refusal of trial court to instruct that if such testimony was believed by jury defendant forfeited his right to self-defense held error.

3. Criminal Law.—It is incompetent for defendant in criminal prosecution to prove his reputation for truth and veracity by substantive testimony in order to establish his innocence of the crime with which he is charged though he may prove it in rebuttal of an attack made by the prosecution provided defendant has testified as witness in his own behalf.

J. W. CAMMACK, Attorney General, and W. J. BAXTER, Commonwealth's Attorney, for appellant.

BURMAN & GREENLEAF for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Declaring correct rule of practice.

The appellee, J. C. Ashcraft, was indicted and tried in the Madison circuit court upon the charge of willfully murdering one Tine Tillett. He was acquitted, and under the provisions of sections 335, 337, and 352 of the Criminal Code of Practice the commonwealth has prosecuted this appeal to obtain a certification of the law on two rulings of the trial court, which counsel contends were erroneously made to the prejudice of the prosecution. Those alleged erroneous rulings are: (1) The refusal of the court to qualify the self-defense instruction, and (2), the admission of substantive proof introduced by defendant in the indictment to establish his reputation for *truth* and *veracity* when there had been no attempt on the part of the commonwealth to so impeach him. We will discuss and dispose of the alleged errors in the order named.

1. It is essential to the disposition of error (1) to make a statement of some of the evidence introduced at the trial, since the duty of the court in the premises is to

be measured entirely by what the testimony heard at the trial tended to prove.

The killing occurred one Sunday morning about 8 o'clock in a turnpike close to the dwelling of one Bert Harvey. The deceased and one Chas. Standifer were foot travelers on the pike. Standifer owned a farm in the neighborhood, but some years prior he left it and had taken up his residence near Hamilton, Ohio. He was visiting the neighborhood on the occasion of the killing, and he and deceased were on their way to Standifer's farm, to which they were going with the intent and purpose of the deceased renting it for the current year. At least some, if not all, of the portion of the pike they had traveled could be seen from defendant's residence located a short distance away. The two met Harvey in the pike near his residence, and the three engaged in conversation during which they were standing on the pike. While so engaged, Standifer discovered defendant walking on the pike toward the three, who were still talking, and he was about 75 or 100 feet away from them, and witness remarked, "Who is that coming down the pike?" when the others looked in that direction and discovered that it was defendant. When the latter got near to the other three, he said, "Good morning, gentlemen," and all of them, including deceased, spoke to him. Defendant shook hands with Standifer, who had been away for some time, and passed right on in the direction of deceased, who was within a few feet from Standifer, and then this happened:

"Defendant looked right at Tillett and said: 'You pale-faced son of a bitch! What makes you unbutton your jacket every time I come up?' And he said, 'I am not,' and Ashcraft said: 'You are a liar, you pale-faced son of a bitch.'

"Q. What was Ashcraft doing all the time then, at the time? A. Started down the pike, and Mr. Standifer took hold of him.

"Q. In whose direction? A. Toward Tillett.

"Q. Go on and tell what he said. A. I said: 'Clark, don't have no trouble; that is no way to settle nothing.' Mr. Standifer took hold of him and says: 'I am the best friend you have: don't do that; don't do that.'

"Q. What was he doing when this man Standifer said that to him? A. He was going down the road all the time.

"Q. Which direction? A. Towards home, towards Mr. Tillett, and Mr. Standifer says: 'I am a brother Mason; listen to me; don't have no trouble.' And Ashcraft said, 'You have got a pistol,' and Tine said, 'Yes, if you want anything this morning, come on.'

"Q. What were they doing then? A. Tillett was standing still.

"Q. Where was his hand? A. Right here on his side.

"Q. Stand up and show the jury. A. He was standing like this with his hands on his hip.

"Q. What was Ashcraft doing all that time? A. Ashcraft had started toward Tillett, and Mr. Standifer took hold of him.

"Q. What was he doing with his hand? A. I cannot say what he was doing with his hand right at that time. (Deceased was one-armed and had but one hand.)

"Q. What did he do immediately after that with his hand? A. When he told Tine he had a pistol and Tine said, 'Yes, if you want anything you can get it, don't come on to me,' about that time I thought they were both reaching for their pistols.

"Q. Did you see him? A. Yes, sir; but Mr. Tillett beat him out and come over with his gun, and I said, 'Look out, Ashcraft, look out,' and he said, 'turn me loose, Charlie.'

"Q. Where did he have hold of him? A. I think his left shoulder.

"Q. Then what did Charlie do? A. He said, 'Go to it, if nothing else will do you,' and stepped over to the side.

"Q. Who fired first? A. Mr. Tillett.

"Q. How soon after Tillett fired before Mr. Ashcraft fired? A. Mighty quick."

Standifer's testimony, and who was introduced by defendant, is substantially the same as that of the witness Harvey, introduced by the commonwealth, concerning the immediate happenings when Ashcraft met the three, and defendant himself qualified such testimony but slightly and, possibly, immaterially. There was proof to the effect that there was prior bad feeling between deceased and the defendant and that the latter on some occasions had made threats concerning him,

but deceased made no demonstration to do defendant harm on any of the prior occasions when they had met. Defendant in his testimony denied that he was carrying his pistol for the purpose of harming the deceased, and stated that he carried it "tolerably regular all the time," and that he was doing so "to protect myself, my own person." Under the testimony as so adduced, we are of the opinion that the court erred in not giving the qualification contended for, the correct form of which may be found in numerous and comparatively recent opinions of this court.

The text in 30 C. J. p. 47, par. 212, in discussing the "Nature and Circumstances of Aggression or Provocation," necessary to take away the right of self-defense, says that there is some uncertainty and confusion as to what facts are sufficient to bring about a "provoking the difficulty" so as to destroy the right of self-defense. But in stating the rule as applied by the great majority of courts, the text says:

"As a general rule any wrongful or unlawful act or insulting or opprobrious language of accused which is reasonably calculated to lead to an affray or deadly conflict, and which provokes the difficulty, is such aggression or provocation as deprives him of the right of self-defense. The accused must be mindful of his words, acts, or conduct which are likely to produce a deadly combat. If by his acts, words, or conduct he shows a willingness to enter the conflict, or if by his words or acts he invites it, he must be held to have produced the necessity for slaying his adversary, and cannot invoke the doctrine of self-defense. Some courts hold that any act intentionally done or word intentionally spoken which under the circumstances, and in the light of accused's knowledge thereof, has a tendency to provoke a difficulty is wrongful within the meaning of the rule, even though ordinarily such act or word would not be wrongful."

But for the purposes of this case, we need not and do not now adopt the rule as stated in the last sentence of the excerpt. The text then proceeds to point out that the Supreme Court of Texas declined to forfeit the right of self-defense if defendant was guilty only of a *wrongful* act as a provoking cause, and it is then said that in order for the provoking conduct to have such forfeiting

effect "there must be acts, words, or conduct on his part reasonably calculated to provoke the difficulty," and the domestic case of Jones v. Commonwealth, 186 Ky. 283, 216 S. W. 697, is cited, with others from other jurisdictions, in support of that statement, and which all of them do.

Our examination of other text authorities and acknowledged authors on criminal law has convinced us that the great weight of authority is to the effect that the provoking acts on the part of defendant, so as to deprive him of the right of self-defense, need not be such as would create the right of self-defense on the part of the deceased had he slain defendant because of the latter's provoking acts and conduct. In thus arriving at the rule as so confirmed, the law necessarily takes into consideration the frailties of human nature and the well-known disposition of humanity to resent clearly abusive and scurrilous epithets and, especially when they are accompanied by any sort of demonstration, and where there is such proof, it is for the jury to say whether there was such a "provoking" or "bringing on" the difficulty as to deprive their author of his right of self-defense against an aggression that he so provoked and brought about, and such is everywhere admitted to be true if it was the intention and purpose of defendant for his words and conduct to have such an effect on the deceased and to thus give the former an excuse for slaying the latter.

But this court has also had the question before it in a number of cases, some of which are: Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801; Moore v. Commonwealth, 143 Ky. 405, 136 S. W. 608; the Jones case, supra; Hawley v. Commonwealth, 191 Ky. 380, 230 S. W. 296; Hall v. Commonwealth, 207 Ky. 794, 270 S. W. 35; and Doneghy v. Commonwealth, 208 Ky. 500, 271 S. W. 586. See, also, Robertson's Kentucky Criminal Law (1927 Ed.) sec. 320. In stating the general rule as applied in this jurisdiction we said in the opinion in the Harris case that—

"A challenge, an assault, such a personal affront or insult as was reasonably calculated to provoke an assault from the other, are equally efficacious in bringing on the fight."

The other domestic cases approved the rule laid down in that opinion, and none of them contains any stronger provoking words and acts on the part of de-

fendant than are found in this case, and in some of them the facts were much less so. They all follow the general rule in the text of Corpus Juris, supra, and which, as we have seen, is in accord with the rule as it is stated by other courts and by standard text-writers.

Defendant, according to the testimony we have inserted, applied to the deceased language and epithets that were as much calculated to provoke an assault as almost any that could be employed, and at the same time he continued to advance towards deceased, who by his words had shown that he resented the language as well as the acts of defendant. The case comes clearly within the settled rule, supra, whereby a defendant forfeits his right of self-defense if the testimony was believed by the jury, and the court erred in failing to give the proper qualification to the self-defense instruction.

2. The contention of the commonwealth with reference to the alleged error (2) is, that substantive testimony to establish the reputation of defendant for *truth* and *veracity,* in order to prove his innocence of the crime with which he was charged, is inadmissible, and with which we find ourselves in accord. In the recent case of Strong v. Commonwealth, 216 Ky. 98, 287 S. W. 235, we had occasion to deal with one phase of the admissibility of reputation testimony, and which, under the literary construction of the opinion, was discussed under subdivision (b) of ground (1), therein, but the particular trait of character there involved was the defendant's reputation for *peace* and *quietude,* and whether the commonwealth could introduce substantive testimony with reference thereto. In discussing that question the opinion said:

"Complaint (b) under this ground presents a more difficult question. In the absence of a statutory rule to the contrary three traits of character, provable by general reputation, may be investigated as affecting the main issue in litigation, but such testimony is more frequently introduced in rebuttal to affect the credibility of a witness or a party if he has testified as a witness, than as substantive testimony. Those three traits which may be proved by general reputation are: (1) For truth and veracity; (2) for morality, and (3) for peace and quietude, and it is the failure of text-writers and courts, in their formation of the correct rule of practice, to dis-

tinguish between the three that has produced some confusion and also produced what clearly appears to be an illogical position in denying the introduction of substantive testimony on the third trait by the prosecution to prove the bad reputation for peace and quietude of the defendant when the nature of the issues being investigated involves it. It is the universal law that testimony to prove traits Nos. 1 and 2 may never be introduced by the commonwealth as substantive testimony. It is equally well settled that the character involved in the third classification may not be introduced to impeach the credibility of a witness, including a defendant testifying for himself in a criminal prosecution, since that trait of character has no bearing on the truthfulness or the veracity of the witness.''

The admissibility of what is usually designated as ''character or reputation'' testimony is quite extensively discussed in the text of 8 R. C. L. beginning on page 207, in sections 202 to 208, both inclusive, and also in volume 10 of the same publication beginning on page 951, in sections 121 to and including 123. Without inserting in hæc verba any portions of the text in either of these volumes, it is sufficient to say that none of it authorizes the admission of substantive evidence on the part of the defendant to prove his trait of character for *telling the truth*. There are many instances, which it is not necessary to here enumerate, wherein it is competent for a defendant in a criminal prosecution to introduce substantive testimony in support of the particular trait of character that the crime for which he is on trial impugns or assails. In other words, the doctrine seems to be quite universal that if the very nature of the crime is itself an assault on the particular trait of defendant's character which he seeks to establish, it is then competent for him to do so by substantive testimony, which, of course, means that he may do so before it has been attacked by the prosecution, and such is the effect of all of the opinions of this court to which our attention has been called, or which we have been able to find, from its beginning until the present time.

In the case of Combs v. Commonwealth, 160 Ky. 386, 169 S. W. 879, this court seems to have recognized the distinction between reputation for the particular trait of character involved in the particular charge against de-

fendant, and his reputation for truthfulness as a witness, and in doing so the opinion in that case said:

> "Evidence concerning the character of a defendant in a criminal prosecution, when offered only for the purpose of affecting his credibility as a witness, must not be confused with evidence of defendant's character offered for the purpose of creating or supporting an inference that he did or did not commit the crime with which he is charged and for which he is on trial."

The same was to some extent referred to in the opinion in the Strong case, supra, and it is clearly apparent, from both text-writers and opinions, that when it is stated therein, in general terms, that defendant may prove his good character by original or substantive testimony, no more is meant than that he may prove such traits of character as the particular charge puts in issue, and that it is not meant by such general statements to assert the correct practice to be that defendant may bolster his character for *truth* and *veracity* by original and substantial testimony. The latter trait of character only becomes relevant if defendant has offered himself as a witness and testified in his own behalf. When done his good reputation for truth and veracity will be protected by the same sustaining presumption as applies to other witnesses, except, perhaps, as it might be affected by his interest, but which interest is not such an impeachment . as will authorize him to introduce testimony of his good reputation for truth and veracity without its first being attacked by the commonwealth, as is pointed out by Mr. Freeman in his note to the opinion in Lodge v. State, the annotations beginning on page 25 of 82 Am. St. Rep.

Such testimony is never applicable and relevant to the guilt or innocence of defendant, unless, perhaps, it should be so held in prosecutions for perjury or false swearing (as to which we express no opinion) ; but reputation testimony upon other traits of character, as we have seen, is frequently relevant upon the issue of guilt or innocence, and when so it may be proven by defendant as a substantive fact.

Our conclusion, therefore, is that it is incompetent for defendant in a criminal prosecution to prove his reputation for *truth* and *veracity* by substantive testimony, but that he may prove it in rebuttal of an attack thereon

made by the prosecution; but that neither such attack nor rebuttal proof thereof by defendant may be made, unless defendant has testified as a witness in his behalf. See also, as deciding the point, Ball v. Commonwealth, 222 Ky. 89; — S. W. —.

It follows, therefore, that the court erred in admitting the testimony referred to, and for the reasons stated this opinion is certified as the correct rule of practice in such cases.