## Harrison v. Commonwealth.

(Decided April 16, 1929.)

C. B. LATIMER and A. J. OLIVER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCAND-
LESS—Affirming.

Floyd Harrison was convicted of the crime of mali-
cious cutting and wounding, and his punishment fixed at
confinement in the penitentiary for a period of one year.
He appeals.

The trouble occurred at the primary election at
Tracy, in Barren county, in August, 1927. Some time
prior to this, the prosecuting witness, William Helm, as
deputy sheriff arrested Floyd Harrison on a charge of
seduction. He had also testified as a witness for the
commonwealth in a prosecution against Herbert Harri-
son, Floyd's brother. On the day of the difficulty, after
the close of the polls, Helm was sitting in front of the
polling place, as he says, whitling on a stick. Floyd Har-
rison came by and called him to the side of the building
and questioned him in reference to having arrested him.
Apparently Helm had explained that matter to
Floyd's satisfaction, when Herbert came up and de-
nounced Helm for testifying against him claiming that
Helm had testified his reputation for truth and veracity
was bad. Helm insisted he had merely testified that
Herbert's reputation was bad for the illegal use of in-
toxicants. This did not pacify Herbert, who cursed
Helm and struck him with his fist, whereupon Helm
made a demonstration as if to cut Herbert with his
knife, though not doing so, and Herbert countered by a
severe blow with his fist. Thereupon Helm made his
gesture good by actually cutting Herbert, who responded
with a blow that felled Helm to the ground. Simultane-
ously with Herbert's third blow, Floyd Harrison ran
around and gave Helm a savage thrust with his knife,
cutting a gash upon his breast nine inches long. Floyd
made no attempt to do Helm further injury and assisted
in pulling Herbert off of him as he lay prostrate upon
the ground. The only error complained of is that the
court erred in giving a qualification to the self-defense in-
struction. That instruction reads: "If you believe from
the evidence beyond a reasonable doubt that Herbert
Harrison brought on the difficulty in which Will Helms
was cut and wounded with a knife by defendant, Floyd
Harrison, by first assaulting said Helms with his fist
when it was not necessary to protect him from immediate
danger, or the infliction on him of death or great bodily
harm, or which reasonably appeared to him about to be

inflicted on him by said Helm, and that thereby said Herbert Harrison brought on such danger to himself, if you believe from the evidence that said danger existed, and the defendant Floyd knew that said Herbert Harrison, so made such danger to himself and the defendant, Floyd Harrison so cut and wounded said Helms, so knowing said Herbert Harrison had so brought on himself such danger to himself then in this event you cannot acquit the defendant on the ground of self-defense.''

Appellant does not question the premise that upon interfering in the quarrel Floyd Harrison stood in the shoes of his brother Herbert and that his right to cut in defense of Herbert must be judged by Herbert's right to cut in his own self-defense. But the argument is that, though Herbert began the difficulty by cursing Helm and assaulting him with his fist, nevertheless such assault would not justify Helm in cutting Herbert with a deadly weapon, as this was the use of excessive force, therefore Helm could not have relied upon self-defense in cutting Herbert; and for this reason Floyd should not be denied the right of defending Herbert, even though Herbert began the difficulty in the manner claimed. This question was considered at great length in the recent case of Commonwealth v. Ashcraft, 224 Ky. 203, 5 S. W. (2d) 1067, in which the facts were more favorable to the defendant than those appearing in this case. After an elaborate review of authorities, we said: ''Our examination of other text authorities and acknowledged authors on criminal law has convinced us that the great weight of authority is to the effect that the provoking acts on the part of defendant, so as to deprive him of the right of self-defense, need not be such as would create the right of self-defense on the part of the deceased had he slain defendant because of the latter's provoking acts and conduct. In thus arriving at the rule as so confirmed, the law necessarily takes into consideration the frailties of human nature and the well known disposition of humanity to resent clearly abusive and scurrilous epithets, and especially when they are accompanied by any sort of demonstration, and where there is such proof, it is for the jury to say whether there was such a 'provoking' or 'bringing on' the difficulty as to deprive their author of his right of self-defense against an aggression that he so provoked and brought about, and such is everywhere admitted to be true if it was the intention and purpose of defendant for his words and con-

duct to have such an effect on the deceased and to thus give the former an excuse for slaying the latter.''

In addition to foreign cases, a number of domestic cases are cited in that opinion in support of the quotation supra, and it must be regarded as decisive of this question.

Wherefore the judgment is affirmed.