## Ross v. Commonwealth.

(Decided February 22, 1924.)

## Appeal from Carter Circuit Court.

1. **Homicide—No Escape from Punishment Because Provocation Great.**—Where at the moment of shooting deceased was walking away from accused, the latter cannot escape punishment, even though the provocation was great and the sense and realization of past humiliation, threats, fear, and abuse almost overpowering.

2. **Homicide—One Shooting Another with Pistol Leveled at Him may Plead Self-Defense.**—One who shoots another who is covering him with a pistol, daring him to move, can claim immunity on plea of self-defense.

3. **Criminal Law—Record Not Examined to Ascertain whether Error Overlooked by Counsel.**—The Court of Appeals will not examine the record to ascertain whether error overlooked by diligence of counsel may be discovered that will authorize a reversal.

4. **Homicide—Evidence to Sustain Manslaughter Conviction.**—Evidence held to sustain conviction for manslaughter.

5. **Criminal Law—Court Cannot Invade Province of Jury and say Verdict Against Weight of Evidence in Absence of Showing of Passion or Prejudice.**—Though an accused should not be unduly, unjustly, or unfairly punished for an offense charged, yet, in the absence of testimony or evidence that would warrant the belief that the jury were swayed by passion or prejudice, whereby accused has not received justice, the Court of Appeals cannot and will not invade their province and say that a verdict is against the weight of the evidence.

6. **Homicide—Previous Threats and Menaces on Part of Deceased Competent.**—In prosecution for murder, court erred in refusing to admit evidence to the effect that only a short time before the killing he saw deceased a few feet in front of deceased's store, and that he was cursing, shouting, and firing his pistol, and that six weeks before the shooting he saw deceased with a pistol pointed at accused forcing him to raise his hands, being competent to shed light upon the beliefs, motives, fears, and necessities of accused at the time of the homicide.

7. **Homicide—Evidence that Accused Refused to go Near Deceased Admissible.**—In prosecution for murder, court erred in refusing to admit testimony of witness that shortly before the shooting and at a time when deceased was riding his horse up and down the platform in front of accused's store, the witness went to the home of accused and found him there, and upon endeavoring to induce him to supply her with some article she desired to purchase, he refused to enter his place of business while deceased was near.

8. **Criminal Law—Exclusion of Evidence Held Not Prejudicial.**—Exclusion of evidence will not warrant a reversal, where the

court permitted accused and other witnesses to testify directly concerning all the facts in question in minute detail.

THOS. S. YATES and WAUGH & HOWERTON for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

On July 16, 1923, Walker Ross, the appellant, was indicted in the Carter circuit court, charged with the wilful murder of one Cecil Conn, a young man living near Olive Hill. It appears that appellant was 34 years of age, with a wife and three children, and had resided in that vicinity since his birth. In 1919 he left a farm where he had been working and opened a store in the village of Limestone, and while thus engaged Cecil Conn, who had lately returned from the army, opened an account in his store, and being somewhat slow in his payments was dunned quite frequently by appellant, who was quite strenuous in his demands. This evidently angered deceased, who, becoming very much embittered as shown by the testimony of numerous witnesses, ceased to deal with appellant, and upon every possible occasion abused and threatened him in a most villainous and unwarranted manner. He was apparently armed at all times with a pistol and seemed to take a special delight, when meeting appellant, in threatening to kill him, and upon one occasion, as testified by several witnesses, pointed his pistol directly at him, demanding that he hold up his hands and threatening to shoot if he failed to obey the command. In fact from the testimony of many witnesses living in the neighborhood, the deceased had so terrorized appellant that he sought to avoid him whenever possible, even to the extent of closing the store and retiring to his home when he appeared in the village, armed with a pistol and often walking up and down in front of his place of business shooting and hurling at appellant threats and epithets of a disgusting and repulsive character; and that the latter would refuse to leave his home even when customers desired to make purchases, so greatly was he in fear of the deceased and his constant threats.

The railroad platform at Limestone was directly in front of appellant's store, and was used by him, as well as for general freight and passenger service; and Conn

evidently found great pleasure in riding his horse up and down this platform, daring appellant to show himself that he might prove a ready target for his pistol. Notwithstanding such treatment and wanton acts of outlawry on the part of deceased, nowhere in the record is it shown that appellant ever attempted to retaliate or defend himself, although he had been warned by numerous neighbors that the deceased was likely to kill him at any time. He appeared thoroughly cowed and sought every opportunity to avoid a meeting.

On the day prior to the shooting, appellant was engaged with some employees near his store placing a culvert under the county road, and, upon seeing Conn approaching, left his work and went home immediately; while the former, as was his custom, fired his pistol a number of times and hurled abuse and curses at him. On the following morning, July 13, about nine o'clock, appellant was again engaged in his work on the road when the deceased, accompanied by a cousin (Chester Flannery), was seen by some of the workmen, and, as testified by them, appellant immediately left, going toward his store. As to subsequent events the testimony varies slightly, but it would appear that Ross made every effort to avoid Conn, who, after indulging in his usual tactics, proceeded in the direction of appellant's home, which was very near the store, and the latter slipped out the back way and went into his barn, distant about forty feet. Two witnesses who were on the store porch stated that the deceased, seeing appellant in his barn, dared him to come out and said he could "see the — peeping out through the cracks." In a few minutes Conn walked down toward the railroad tracks, and appellant left the barn, going to the rear of his store, a moment later appearing on the front porch with a pistol in his hand, and a witness (Ethel Bloomfield) testified that he was "pale and scary looking," and seeing the pistol and thinking he intended to shoot, she called to him, "Don't do that," and appellant replied, "Shut your mouth." At this time the deceased and his companion, Chester Flannery, were about fifty yards distant, walking down the railroad track with their backs to the store, and appellant immediately fired a number of times, one shot striking him in the back, from the effects of which he died in a few minutes. A number of other witnesses who saw the shooting testified that at the time of the killing the deceased was walking directly away from appellant, and though he car-

ried a large pistol strapped at his side, he was doing nothing of an offensive nature or of a character calculated to warrant the belief on the part of appellant that at this moment he contemplated injury to him of any kind.

The evidence of appellant varies but slightly from those testifying in behalf of the Commonwealth, with the exception, however, of the statement that when the witness, Ethel Bloomfield, called to him in a loud tone not to shoot, the deceased, evidently hearing her outcry, turned, and upon seeing him endeavored to draw his pistol from the holster, when, he claims, he fired in self-defense. This version, however, is not supported by any of the many witnesses who testified, and it would appear that just at the moment of the shooting appellant was not justified in his action, nor can he hope to escape punishment even though the provocation may have been great and the sense and realization of past humiliation, threats, fear and abuse almost overpowering. Had he shot him on the occasion when deceased was covering him with a pistol and daring him to move, he would have been well within his rights and could have claimed immunity on a plea of self-defense; however, he could not expect aquittal when he shot his adversary in the back and at a time when no real provocation existed.

This court is not unmindful of the mental suffering that appellant may have undergone during the two years prior to the killing, and it would seem that for him it was an existence of abject terror, with the ever-abiding fear that any day he might be assassinated by this young ruffian whose character was described by many witnesses as of the very worst. It would have been less than human had he entertained any other feeling for him than one of bitter hatred and resentment, and his brooding over these taunts and threats probably culminated in the shooting.

Appellant was tried at the December term of court, convicted of manslaughter and given eight years in the penitentiary, from which judgment he appeals.

Although ten grounds were urged by his attorney in support of the motion for a new trial in the court below, we shall consider only such of them as are relied upon by his counsel in seeking a reversal of the judgment; it being a well known rule of this court that its time will not be wasted in examining the record to ascertain whether an error overlooked by the diligence of

counsel may be discovered that would authorize a reversal.

Counsel in his brief argued but four of the grounds presented, and as the fifth and ninth are practically the same, we will deal with them jointly.

"Fifth: Because the verdict is against the law and the evidence.

"Ninth: Because the verdict is not sustained by sufficient evidence and appears to have been rendered under the influence of passion and prejudice."

Counsel contends that there is little or no conflicting evidence in this case, which is entirely true, and further says: "The plea of shot in the back raised such prejudice in the minds of the jury that they could never see the danger to the defendant or get his view at any time."

The evidence shows conclusively that deceased was shot in the back, and while the ball did not go straight through the body, but rather ranged to one side, nevertheless, the testimony of every witness, without an exception, substantiates this allegation that he was shot in the back, and with this testimony before them the jury could scarcely have believed otherwise, as the testimony of appellant himself was the only one of a contradictory nature; but the place where the ball entered cannot well be denied or its location questioned. Therefore, the contention that the verdict is against the law and the evidence, or was not sustained by sufficient evidence is thoroughly groundless and possesses no merit.

This court has held in numerous opinions that the jury are the triers of the facts, and as said in Tetterton v. Commonwealth, 89 S. W. 8, 28 Ky. L. Rep. 146:

"Considering all the facts and circumstances proven as to the conduct of the deceased at and prior to the time he was killed, as well as the conduct of appellant, we•are of the opinion that he was guilty of the crime of manslaughter, but we think the penalty as fixed by the jury was rather severe. The jury, however, were the triers of the facts."

In the case cited the court seemed of the opinion that the jury were not entirely justified in returning a judgment of this severity; however, it did not feel warranted and could not deem it proper to set aside the verdict of a jury who had heard all the testimony and had an opportunity to observe the demeanor of witnesses

upon the stand and place proper credence in the probable worth of their testimony.

A true and just regard must ever be exercised in behalf of the rights of one accused of crime, and he should not be unduly, unjustly and unfairly punished for an offense charged; nevertheless, in the absence of testimony or evidence that would warrant the belief that the jury were swayed by passion or prejudice whereby the accused has not received justice, this court cannot and will not invade their province and say that a verdict is against the weight of the evidence.

In the case at bar, while it cannot be denied that appellant had great provocation and was entitled to much consideration, we feel that the jury in their deliberations were actuated by a strong desire to see justice done, and at the same time, in returning a verdict of eight years for manslaughter, displayed a tender regard for the trials through which appellant had gone and the suffering he unquestionably endured, especially as he was indicted for murder, a charge that could have carried with it death. While endeavoring to deal mercifully with accused, they very properly upheld that provision of the law which prohibits the taking of a life by those who at the time of the killing are apparently in no danger, and who cannot and should not be influenced by feelings of passion and resentment over which they exercise no control.

"Sixth: Because the court erred in failing to admit in evidence competent, material, and relevant evidence offered by him, to which the defendant excepted and which was prejudicial to his substantial rights.

"Seventh: Because the court erred in the admission of incompetent, irrelevant and prejudicial evidence against the defendant, and which was objected to at the time and which was prejudicial to his substantial rights."

It is apparent (page 12, transcript) that the court erred when it refused to admit in evidence a statement by a witness to the effect that only a short time before the killing he saw the deceased a few feet in front of appellant's store, and that he was cursing, shouting and firing his pistol. Also (page 15, transcript) the court refused to allow the same witness to testify that on the 26th of May, six weeks before the shooting, he had seen deceased with a pistol pointed at appellant forcing him

to raise his hands. This was entirely competent to show the attitude of the deceased and his evident desire and intention to bring about a difficulty without the slightest cause, and was equally competent to show the state of mind of appellant and the provocation he might have had when later he shot him, as proof of previous threats and menaces on the part of the deceased are competent to shed light upon the beliefs, motives, fears and necessities of the accused at the time of the homicide. Mullins v. Commonwealth, 172 Ky. 92.

Again (page 54, transcript) the court refused to admit the testimony of a witness who would have stated that shortly before the shooting and at a time when deceased was riding his horse up and down the platform in front of appellant's store, she (the witness) went to the home of appellant and found him there, and upon endeavoring to induce him to supply her with some article she desired to purchase, he refused to enter his place of business while deceased was near.

In the absence of other testimony relative to the questions mentioned, wherein the court refused to admit evidence that we deem competent, reversible error might have been properly claimed; however, upon reading the transcript, we find that the court permitted appellant and other witnesses to testify directly concerning all these facts in such minute detail that we do not consider the errors, if such they were, of a prejudicial nature or of a character calculated to prevent the accused from having a fair and impartial trial.

Attorney for appellant cites Wilson v. Commonwealth, 140 Ky. 3, to strengthen his contention that the verdict was not sustained by sufficient evidence and that it was rendered under the influence of passion and prejudice. However, in the case referred to we find, among other things, the court said:

> "There was abundant evidence by the Commonwealth to warrant the conclusion of the jury, if the jury believed the Commonwealth's witnesses. The credibility of the witnesses is for the jury, and this court will not disturb a verdict because the jury believed one set of witnesses rather than another. The verdict must be palpably against the evidence or it cannot be disturbed."

After a careful review of all the testimony offered in this case, the court cannot but feel that, though un-

fortunate as are all the attendant circumstances relating to it, the appellant was fairly and justly convicted; further, that the jury mercifully gave every consideration to the aggravating circumstances and unhappy state of mind by which it was evident the deed was prompted. Let the judgment be affirmed.