## Moore v. Commonwealth.

(Decided February 14, 1928.)

### Appeal from Jefferson Circuit Court (Criminal Branch).

1. Criminal Law.—Conviction for crime may be had on circumstantial evidence alone, but evidence must be of such character that it may not be reconciled with presumption of innocence of accused person, but must possess such force as to exclude every reasonable hypothesis of defendant's innocence.

2. Homicide.—In prosecution for murder, evidence held sufficient to require submission of case to jury.

3. Criminal Law.—Where, under evidence, clear case for jury to determine guilt or innocence of accused arises, appellate court has no authority to disturb verdict based on evidence of facts and circumstances which meet every demand of rule of law applicable to situation.

4. Criminal Law.—Trial court has broad discretion in applying rule respecting separation of witnesses under Civil Code of Practice, sec. 601, and appellate court will refuse to intervene, in absence of abuse of discretion.

5. Criminal Law.—In prosecution for murder, where assistant commonwealth's attorney stated in argument to jury that, "if this man is given a life term in a penitentiary, he will get out in a few years," and statement was objected to, and on objection being overruled, exception was taken, held that statement was not prejudicial to substantial rights of accused, and did not constitute reversible error.

6. Criminal Law.—All arguments by attorneys for commonwealth should be based upon evidence and deductions logically flowing therefrom, and they should not undertake to influence jury by extraneous matters or by appeals beyond limits defined by appellate court.

7. Criminal Law.—In prosecution for murder, where two of instructions were identical in substance, held that duplications did not constitute error, since right of accused was not prejudiced thereby, in view of Criminal Code of Practice, sec. 340, providing that judgment of conviction shall not be reversed for any error of law appearing on record, when, on consideration of whole case, court is satisfied that substantial rights of defendant have not been prejudiced thereby.

8. Criminal Law.—Jury, and not appellate court, is provided by Constitution for determination of questions of guilt or innocence under proper instructions and competent evidence.

9. Criminal Law.—Function of appellate court in determining guilt or innocence of accused is limited to ascertainment from record of whether there is any evidence from which, if believed, jury could find verdict of guilty under law as defined in instructions of court.

10. Criminal Law.—Under Criminal Code of Practice, sec. 282, providing for manner in which bill of exceptions shall be prepared, errors complained of in motion for new trial are not reviewable in appellate court, in absence of exception taken and shown by bill of exceptions.

S. L. GREENBAUM and L. D. GREENE for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Anna Eslick, a colored woman, lived in a rooming house at 657 South Twelfth street, Louisville, Ky. On December 8, 1926, her lifeless body was found locked in her room. The only means of access was through a window. A broken beer bottle with a jagged end was found upon the floor of the room. The woman's body was still warm, the right side of her face was badly cut, the right eye destroyed, the nose broken, the skull fractured, and many cuts and bruises on the forearms. The room and contents were spattered with blood and brains. Death had been caused by the fractured skull and crushed condition of the head, caused by heavy blows with the beer bottle, or some such weapon. Other roomers in the house heard a thumping sound in the room where the crime was committed, and also heard the victim's vain cry: "Don't let him kill me—open the door!" It was then dark, and shortly thereafter the woman was found in the bloody and mutilated condition just described. It was plain that a crime had been committed, and the police were called, and arrived upon the scene in a few minutes.

The appellant, William Moore, was arrested about 11:30 p. m., and accused of the crime. He was later indicted, tried, and convicted of the willful murder of the woman, and a sentence of death pronounced upon him. He has appealed to this court and insists that the lower court erred: (1) In denying a peremptory instruction to the jury to find him not guilty; (2) in rejecting com-

petent evidence offered by him, and in admitting incompetent evidence on behalf of the commonwealth; (3) in permitting improper conduct by the commonwealth's attorney during the progress of the trial and in the closing argument to the jury; (4) in failing to instruct the jury on the whole law of the case; (5) in refusing to vacate the verdict as contrary to the law and the evidence; and (6) in the refusal to discharge the jury on motion for the defendant. We shall consider these complaints in the order stated.

It is urged that the evidence, being circumstantial, was insufficient to warrant the court in submitting the case to the jury, or to justify the conviction, for the reason that the evidence is as consistent with defendant's innocence as it is with his guilt. It is the rule in this state that a conviction for crime may be had upon circumstantial evidence alone, but the evidence must be of such character that it may not be reconciled with the presumption of innocence that attends every accused person, and must possess such force as to exclude every reasonable hypothesis of the defendant's innocence. Mullins v. Commonwealth, 196 Ky. 687, 245 S. W. 285; Wendling v. Commonwealth, 143 Ky. 587, 137 S. W. 205; Mitchell v. Commonwealth, 217 Ky. 155, 289 S. W. 208; Daniels v. Commonwealth, 194 Ky. 513, 240 S. W. 67; Johnson v. Commonwealth, 217 Ky. 705, 290 S. W. 693; Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910; Denton v. Commonwealth, 188 Ky. 30, 221 S. W. 202.

It is therefore necessary to examine the evidence in this case to ascertain whether or not it measures up to the requirements of the legal test.

Monroe Weston testified that he lived in the same building where the crime was committed, and, after supper, as he was leaving the place, he went through the room of Anna Eslick, and paid her 50 cents which he had previously borrowed from her. He found the appellant, William Moore, in the room, engaged in an angry argument with Anna Eslick. The witness said that appellant was in the habit of visiting Anna Eslick almost every day and Sunday, too. At the time Weston saw Moore with the deceased the door to the room was unlocked, and partly open, and, as Weston approached, the argument was suspended, but, as he left, it started again. He walked a short distance to a store where he purchased a few articles, and in a few minutes heard the police coming to the scene of the crime. He returned, and found Anna Eslick's room occupied by the police, and

Anna Eslick dead. Weston testified that the appellant had on a gray coat when he saw him with the deceased. When arrested, he did not have on the gray coat, but it was found hanging on the wall at his home. Appellant said he had not worn the gray coat for some time. The pocket contained a street car transfer bearing the date of December 8th, and showing it had been obtained about 4:45 p. m. that day. Blood was found upon the gloves, shoes, coat, shirt and hat of the appellant. An effort had been made to wash the blood from the coat, shoes, shirt, and perhaps from some other articles.

The blood spots on all these articles were damp, and the washed articles were still wet. Appellant first denied to the officers that the spots were of blood, but a moment later referred to some chickens and a rabbit as the possible source of the stains. He ran when he first saw the police, and, when apprehended, he requested some one to tell his wife that they had got him for that, and, when asked for what, he declined to say.

We are of the opinion that the evidence for the commonwealth was of the character, quality, and quantum calculated to induce belief beyond a reasonable doubt that the appellant was the murderer of the unfortunate woman. O'Brien v. Commonwealth, 89 Ky. 354, 12 S. W. 471, 11 Ky. Law Rep. 534.

Appellant apparently thought so himself, for he went upon the witness stand, and either denied or explained as best he could all the damaging facts and circumstances that had been adduced against him.

He testified he was not at Anna Eslick's room on that fatal day, but on the day before; that he did not deny there was blood on his clothing, or attribute it to animals, but testified that the blood came from his hands, nose, and a mashed finger; that his message to his wife after he was arrested referred to some trival matter, and he did not then know he had been picked up on a murder charge. He claimed he was working on his automobile that evening, and, after the work was finished, he attended a show at the Lincoln Theatre. Aside from his own testimony, appellant introduced only one witness, a colored preacher, of limited opportunity to know, but who testified that the appellant was a peaceable citizen and of good reputation.

In rebuttal, the commonwealth offered evidence contradictory of appellant's testimony regarding his bleeding hands.

The evidence made a clear case for the jury to determine the guilt or innocence of appellant, and we have no authority to disturb a verdict based upon evidence of facts and circumstances which meet every demand of the rule of law applicable to the situation.

Appellant complained in his motion and grounds for a new trial of the rejection of competent evidence offered by him, but in his brief he fails to point out any such evidence or ruling, and a careful reading of the transcript of the evidence has failed to disclose a single instance of the kind. The same is true as to incompetent evidence admitted for the commonwealth. The only exception along this line shown by the record is to the action of the court in admitting in rebuttal the testimony of several witnesses who had not been excluded from the courtroom during the trial, although the rule requiring separation of the witnesses had been asked and applied. The transcript shows that the court limited the testimony in rebuttal strictly to contradiction of the appellant's testimony to the effect that his hands were the source of the blood upon his clothing. The court was alert to protect the appellant against any testimony in rebuttal other than that which was clearly competent as such. Indeed, the court excluded one witness, an officer, whose testimony might properly have been heard. The trial courts have a broad discretion in applying the rule respecting the separation of witnesses, and this court has uniformly refused to intervene in such matters, in the absence of an abuse of discretion. Civil Code of Practice, sec. 601; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075; Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116; Boyd & Jones v. Commonwealth, 194 Ky. 75, 238 S. W. 182.

The appellant criticizes the conduct of the commonwealth's attorney during the progress of the trial and in his closing argument to the jury, insisting that it was prejudicial to his substantial rights. It appears from the transcript that during the argument of the assistant commonwealth's attorney, he stated, among other things, that, ''if this man is given a life term in a penitentiary he will get out in a few years.'' This statement was objected to, the court overruled the objection, and the defendant excepted. This court has dealt frequently with complaints of improper conduct and arguments on the part of commonwealth's attorneys, and has fully expounded the law upon that subject. Slaughter v. Commonwealth, 149 Ky. 5, 147 S. W. 751; Lawler v. Common-

wealth, 182 Ky. 185, 206 S. W. 306; Chappel v. Common-
wealth, 200 Ky. 429, 255 S. W. 90; Bailey v. Common-
wealth, 193 Ky. 687, 237 S. W. 415; Bolin v. Common-
wealth, 206 Ky. 608, 268 S. W. 306; Linde v. Common
wealth, 208 Ky. 98, 270 S. W. 451; Welch v. Common-
wealth, 189 Ky. 579, 225 S. W. 470; Housman v. Com-
monwealth, 128 Ky. 818, 110 S. W. 236.

All arguments by the attorneys for the common-
wealth should be based upon the evidence and the deduc-
tions logically flowing therefrom, and should not under-
take to influence the jury by extraneous matters or by
appeals beyond the limits defined by this court. We can-
not say, however, from this record that the remarks re-
ferred to were prejudicial to the substantial rights of the
appellant. Upon the authorities cited, and others therein
mentioned, we are constrained to hold that the statements
of the attorney in this case did not constitute reversible
error.

The court submitted to the jury eight instructions.
The first one covered the subject of willful murder, and
is in the form often approved by this court. The second
defined, in accordance with the decisions, what consti-
tuted a deadly weapon, and left to the jury to find from
the evidence whether the beer bottle offered in evidence
was such a weapon and fully advised the jury that, unless
they believed from the evidence beyond a reasonable
doubt that it was a deadly weapon, as therein defined,
they could not so find, or convict the defendant of murder.
The third instruction was as follows:

"No. 3. Though the jury may believe from the
evidence beyond a reasonable doubt that the defend-
ant, not in his necessary self-defense, killed said
Anna Eslick as set out in instruction No. 1, but do
not believe from the evidence beyond a reasonable
doubt that the beer bottle was a deadly weapon, they
will find the defendant guilty of involuntary man-
slaughter, an offense included in the indictment; and
fix his punishment at imprisonment for a time in
the discretion of the jury, or at a fine in their discre-
tion, or at both such fine and imprisonment, and they
may say in their verdict that said fine or imprison-
ment or both shall be at hard labor in their disre-
tion."

The fourth instruction correctly defined the words
"willfully" and "with malice aforethought." The fifth

properly submitted the law of self-defense. The sixth advised the jury that a reasonable doubt of defendant's guilt entitled him to an acquittal, and, further, that a reasonable doubt as to the degree of the offense, if one was committed, required them to convict of the lesser crime. The seventh merely prescribed the form of verdict, and the eighth was an exact duplicate of the third, above quoted.

The only complaint of these instructions made in brief for the appellant is that instruction No. 3 and No. 8 are identical. It appears from the record that such is the fact. It was doubtless an inadvertence, which would have been corrected by the court if it had been called to his attention. The instruction was a proper and necessary one under the evidence. Duplication of it could not have been prejudicial to appellant. The most that could be said of such repetition is that it tended to emphasize the issue there presented over the other issues involved in the case. The jury did not find appellant guilty under instructions No. 3 or No. 8, but under instruction No. 1, which properly submittted the issue of willful murder, and which was the only instruction under which the death penalty could be inflicted. The instructions were carefully prepared, and amply safeguarded all the rights of the appellant. We have held in civil cases that the duplication of an instruction on contributory negligence was not prejudicial, even though it had the effect of emphasizing the defense of contributory negligence, upon which the verdict for the defendant might have been based. Herndon v. Kentucky Traction & Term. Co., 214 Ky. 36, 281 S. W. 1036; Trent v. C. & O. Railway Co., 221 Ky. 622, 299 S. W. 556.

The same rule must apply in a criminal case. Under section 340 of the Criminal Code of Practice, this court is only authorized to reverse a judgment of conviction for any error of law appearing on the record, when, upon the consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby. No suggestion is made as to how the rights of the appellant could have been prejudiced by the repetition of an instruction upon an offense of which he was not convicted. The letter of the law should never be permitted to kill its spirit. Rutherford v. Commonwealth, 78 Ky. 639; Hendrickson v. Commonwealth, 147 Ky. 301, 143 S. W. 993.

Another insistence of appellant is that the verdict was contrary to the law and evidence. What has been said in the earlier part of this opinion as to the facts proven disposes of the contention. The evidence points to the guilt of the appellant, and is plainly adequate to sustain the finding of the jury. It is the jury, and not this court, that is provided by the Constitution of the state for the determination of questions of guilt or innocence under proper instructions and competent evidence. Our function in this respect is limited to the ascertainment from the record whether there is any evidence from which, if believed, the jury *could* find a verdict of guilty under the law, as defined in the instructions of the court.

The motion and grounds for a new trial complained of a refusal on the part of the court to discharge the jury on motion of the defendant. We find nothing in the record upon which such motion could be based. Indeed, no such motion appears in the record, or any ruling of the court thereon. It is a settled rule of practice that errors complained of in a motion for a new trial are not reviewable here, in the absence of an exception taken and shown by the bill of exceptions. Criminal Code. sec. 282; Dalton v. Commonwealth, 216 Ky. 317, 287 S. W. 898. The record shows exceptions to many minor rulings of the trial court which were not made the basis of complaint in the motion for a new trial or in the brief here, but, because of the gravity of the case, we have examined them, and agree with counsel that the rulings in each instance were so obviously correct that discussion thereof is not necessary.

Upon a careful consideration of the whole record, we have reached the conclusion that the appellant had a fair trial, and that no ground exists for interference with the verdict of the jury. The punishment inflicted on the appellant is the most extreme known to the law, but if, as the jury has found, he committed the crime, he was alone the architect of his fate. He may not justly complain that society lawfully exacts of him the penalty prescribed by law for the crime he committed in taking with malice and without mercy the life of a helpless woman.

Judgment affirmed.

Whole court sitting.