## Cowan v. Commonwealth.

(Decided March 15, 1929.)

TANNER OTLEY for appellant.

J. W. CAMMACK, Attorney General, and GEO H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Affirming.

The appellant was convicted as an aider and abettor of one Sam Guffey in the killing of William Lee, and has appealed. His grounds for reversal of the judgment against him are: That the indictment is insufficient; that he was entitled to peremptory instruction; and that instructions given are erroneous.

■ The demurrer to the indictment was properly overruled. It charged appellant and Sam Guffey with murder, committed as the result of a conspiracy between them or by Sam Guffey actually shooting the decedent while appellant was present aiding and abetting him therein. The indictment meets the requirements of sections 122 and 124 of the Criminal Code.

■ Appellant insists that the evidence is insufficient to justify the submission of the case to the jury or to sustain the verdict. Appellant and Sam Guffey met in the pool room of the decedent, William Lee, in Albany, Ky., between 12:30 and 1 o'clock on the afternoon of Saturday, February 11, 1928, where they played pool for two or three hours. They then left the pool room, got on their horses, and rode a short distance out of town, where they each drank some liquor, and, after about 30 minutes, returned to the pool room where a difficulty arose between Guffey and one Gross. Guffey and Gross were separated by the decedent, Lee, and another person, and Guffey was ordered by Lee to leave the pool room, and he was led therefrom by Lee and appellant. When he got outside, Guffey was mad and indulged in such use of profanity and loud talking that he was arrested by a deputy sheriff and carried before the county judge, where he executed bond for his appearance, and appellant signed his bond as surety. They then left the courthouse together and went into a store, where appellant purchased eight .38 special caliber cartridges. They then walked about town and were seen at different places engaged in conversation with each other by different people, and, some 30 minutes before the killing, went

170

together to the barber shop of Jesse Davis, where appellant got shaved and had his hair cut. While in the barber shop, they sat together on a bench, or settee, and conversed in low tones, and, shortly after their arrival at the barber shop, Virgil Gross, with whom Guffey had had the difficulty in the pool room, and Cordell Griffin, came to the shop. Appellant and Guffey say Gross and Griffin looked in the shop, saw them, and that Gross said, "There sits the G— d— son of a b—, I ought to kill him, and immediately walked in the shop, passed them, went to the rear, each took a drink of water, and walked out. Jesse Davis, the barber, and Phillips and De Laney, who were in the shop at the time, say Gross and Griffin looked in through the window but did not come in, and neither of them heard any conversation between Gross and Griffin, and neither of them heard the statement which Guffey and appellant attribute to Gross. After Gross and Griffin went away from the barber shop, Guffey and appellant again had a whispered conversation, and appellant was seen to hand a pistol to Guffey, whereupon Guffey left the barber shop and returned in about 15 minutes. He and appellant then left the shop together and went out on the street to within 50 or 60 feet of the decedent's pool room, where they stopped, and again had a short conversation in low tones, when Guffey walked directly to the pool room of decedent, opened the door, and, without entering, the shooting commenced, in which Lee was wounded, and from which he died on the eighth day thereafter. The proof is that, when Guffey opened the door, he asked Lee if he might come in, and that Lee answered he might if he behaved himself, and that Guffey said he would behave himself if treated like a man, following which conversation Guffey immediately shot at Lee, and Lee in turn shot at Guffey, whereupon Guffey fired through the window and hit Lee, which last shot produced the wound which caused his death. The proof further shows that, when Guffey left the barber shop, and after receiving from appellant the latter's pistol, he went to a nearby store and also purchased eight .38 special caliber cartridges. The pistol appellant gave Guffey was a .38 special. Both appellant and Guffey testified that Guffey got the pistol and purchased the cartridges to protect himself from Gross; that at no time during the afternoon did either of them mention the name of the decedent, Lee, and they both testified there was no conversation concerning Lee or

arrangement whatever between them to shoot, injure, or kill him. They both testified that, after leaving the barber shop, and when they stopped on the street within 50 or 60 feet of decedent's pool room, and had the conversation above referred to, Guffey proposed to appellant that they return to the pool room and play pool again, but that appellant declined, saying he was going home, and that this was the sole topic of conversation between them at the time. Appellant says: That, when Guffey left him and went to the pool room where the shooting occurred, he turned and joined three or four men who were standing near by, and was with them when the shooting occurred. He heard the shots, turned and saw the flame from Guffey's pistol. He then went in Bolin's barber shop and shortly afterwards learned that Guffey had been arrested. That he had not then started home because he had changed his mind about going home. He then came out on the street and was himself arrested. The proof shows that the decedent was shot with the pistol appellant gave to Guffey in the barber shop, and shows further that, at the time appellant gave it to Guffey, there were no loads in the pistol, and, that the eight cartridges appellant had purchased after Guffey's first arrest were found on appellant when he was arrested.

The above is, in substance, the evidence upon which appellant was convicted, and which he now complains is sufficient to sustain the verdict against him. It is pointed out by his counsel that, in the difficulty between Guffey and Gross, appellant was acting the part of a peacemaker, and assisted in leading Guffey out; that there had never been any trouble whatever between appellant and Lee, and that they were friends; that appellant loaned his pistol to Guffey for the purpose of protecting himself against Gross; that there is no proof of any sort that appellant aided, abetted, counseled, or encouraged Guffey in the killing of Lee by appellant, nor any evidence upon which a suspicion of any aiding or abetting, counseling or encouraging, can be founded. From this, and the testimony of Guffey and appellant that appellant declined to return to the pool room with Guffey when the shooting took place, it is argued that appellant did not in any way aid, counsel, advise, or encourage Guffey in the commission of the crime.

While, of course, there is no positive testimony of any overt act upon the part of appellant, except that he provided Guffey the pistol with which the latter shot

Lee, yet the jury had before it, and was authorized, and it was its duty to consider, the following circumstances: Guffey was mad at Lee for having put him out of the latter's pool room. He cursed and swore about that to such an extent, when put out, that he was arrested and carried before the county judge, where appellant executed bond for him and thus prevented him from being placed in jail. Guffey was smarting under what he considered to be ill treatment at the hands of Lee. Appellant and Guffey left the courthouse together immediately after having executed bond, went into a store, and appellant purchased eight cartridges for the pistol he then had on his person. They were continuously together afterwards, indulging in whispered conversation. Cowan loaned Guffey his pistol, and Guffey immediately bought cartridges for it; and 30 minutes later they went within 50 or 60 feet of Lee's pool room, holding a whispered conversation for a few minutes, when Guffey went straight to the pool room and the shooting commenced.

Looking at the case in the light of these circumstances, indubitably established by, and to be drawn from, the testimony, we are not prepared to say that the evidence of appellant's guilt was insufficient to take the case to the jury, or to sustain the verdict. We are authorized to reverse a judgment of conviction upon the evidence only when the verdict is palpably against the evidence. Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329; Christie v. Commonwealth, 193 Ky. 799, 237 S. W. 660, 24 A. L. R. 599; Gilbert v. Commonwealth (Ky.) 14 S. W. (2d) 194, decided February 15th, 1929.

■ It is difficult to determine from counsel's brief just what fault he finds with the instructions; but we gather his criticism is directed principally to instruction No. 7, by which the right of self-defense was qualified by denying such a defense to appellant if Sam Guffey having been armed by appellant sought out the decedent for the purpose of killing him. Such an instruction is authorized when there is evidence justifying it, and has been approved in each of the following cases: Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476, and cases therein cited, and Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801. There was evidence in this case to authorize the giving of such an instruction, and appellant's complaint thereof is without merit. The other instruc-

tions given were not prejudicial to defendant, but were such as should have been given, and are the standard form of instructions in this class of cases in this jurisdiction.

Perceiving no error, the judgment is affirmed.