## Lee v. Commonwealth.

(Decided Sept. 29, 1933.)

422

W. W. BARRETT for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Jerry Lee was indicted in the Pike circuit court, charged with the crime, denounced in section 1166 of Kentucky Statutes, of maliciously shooting at and wounding Earl Fairchild. On the trial of the case, he was found guilty as charged, and his punishment fixed at five years' confinement in the State Reformatory at Frankfort. He appeals.

While several assignments of error are made by the appellant in his motion and grounds for a new trial, he may be here taken upon this appeal to have waived all of same but one, as by counsel in brief it is stated that "we insist only on one ground, and that is, the verdict of the jury and judgment of the court is not supported by the evidence in this case, and that the verdict of the jury was the result of passion and prejudice on their part, brought about by the remarks of the commonwealth's attorney who prosecuted the case, and bringing into the case inflammatory matter insinuating that there had been improper relations between the appellant and the wife of Fairchild."

Addressing ourselves to this one contention, that the jury's verdict is unwarranted by the evidence, we will here briefly summarize it.

The facts which the testimony of the commonwealth's witness, Earl Fairchild, tended to show, were that the appellant, Jerry Lee, and the prosecuting witness, Fairchild, had for some years before their shooting difficulty here in evidence worked together and been close friends; that the appellant had boarded for some time in the home of Fairchild and had raised a garden

at the latter's home during the year in which this difficulty occurred between them; and it is further shown that their friendship had been broken up, it is claimed by Fairchild, by the appellant's persistent attentions and suspected improper intimacy and relationship which had come about between appellant and Fairchild's wife, to which Fairchild had objected and remonstrated with the appellant without effect.

As tending to show this situation, the prosecuting witness, Fairchild, testified that a short while before his and the appellant's final difficulty his wife had stated one evening that she was going that night to the home of her parents in an adjoining county some forty or fifty miles distant; that he had told her in the presence of Jerry Lee, who was there at the time, that he could not take her home that night and forbade her to go, when she replied that she would go with Jerry Lee, and she and Lee did then leave him and his home over his protest and objection; and also that she later abandoned him and his home to go and live with Jerry Lee and his children in Lee's home also in an adjoining county for a month or two. Further, it appears that on the Sunday next before the shooting here in evidence Fairchild had gone to a public swimming pool near his home, where he saw his wife, sitting in appellant's car near him and her brother; that he went to the car to talk with her about being there with appellant, when, he testifies, his wife picked up a pistol which was lying in the car; and that the appellant came up and took it and "threw it" on him and ordered him away. It is further shown that on the following Saturday afternoon, when Fairchild was walking up the highway towards his home situated some 800 yards distant, up the hollow, from off the road, he was passed on the road by his brother-in-law, Frank Blanton, a young man some 22 or 23 years of age and the appellant who were driving up the road in the latter's car towards the witness' home; that when the witness reached a point further up the road at the mouth of the hollow, where he had to turn off to go to his home, he there saw the appellant sitting alone in the car parked by the road facing him; that he passed the car and turned towards the hollow, when appellant stopped him; that he then told Lee he did not want to talk with him, whereupon Lee grabbed his gun and, as stated by witness, "when he

done that, I grabbed mine and we both started shooting." When asked who fired the first shot, the witness answered, "Well, there wasn't but little difference." When asked, "Did you get your gun first or did he get his first?" he answered, "He got his first." The witness also stated that the appellant had followed him as he had gone out to his home on this Saturday noon, making several stops along the way, and also that, in the exchange of shots between him and the appellant, he had been shot once through the body, the bullet lodging in his back under his shoulder blade.

There were no eyewitnesses to the shooting except the witness Fairchild and the appellant, Jerry Lee.

On the other hand, the proof for defendant was that on the Saturday afternoon, when this difficulty occurred, the appellant was preparing to leave for his home in another county, and that he had promised to take along Fairchild's brother-in-law, Frank Blanton; that the latter had requested appellant to first take him by Fairchild's home to speak with his sister, Mrs. Fairchild, and that he had consented to this, but had refused to go with him up to the house, as he suspected that Fairchild would be feeling sore with him because of what had occurred between them on the previous Sunday; that Blanton had left him and gone up to the house alone; that, while appellant was waiting for him to return, the witness Fairchild came down the road; and that, when he came up along by the car, without saying anything, he drew his gun and shot three or four times into the side and door of the car, the bullets ranging close by the appellant, before he undertook to even get his own gun and return the fire, and that he only then fired four or five times at the defendant in his self-defense.

Upon this conflicting evidence, the jury, after hearing argument of counsel and under the instructions of the court, returned a verdict finding the defendant guilty as charged in the indictment.

Appellant here urges for the reversal of this verdict that it was flagrantly against and unsupported by the evidence.

The synopsis of the evidence as above given is sufficient to show the conflict therein, fully authorizing, we are of the opinion, the verdict of the jury. The weight

and effect of the evidence and the credibility of the witnesses were matters wholly within the province of the jury. Clark v. Commonwealth, 105 S. W. 393, 32 Ky. Law Rep. 63; Weathers v. Commonwealth, 162 Ky. 146, 172 S. W. 107; Elmendorf v. Commonwealth, 171 Ky. 410, 188 S. W. 483; Branham v. Commonwealth, 223 Ky. 238, 3 S. W. (2d) 629; Epperson v. Commonwealth, 227 Ky. 404, 13 S. W. (2d) 247, 249; Jones v. Commonwealth, 250 Ky. 204, 62 S. W. (2d) 56, 58. In the last-named case, the language of the court's opinion upon this question is as follows:

"It is an established rule, if there is any substantial evidence showing the commission of the offense, the case should be submitted to the jury [Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140; Blankenship v. Com., 228 Ky. 830, 16 S. W. (2d) 478], and whether the witnesses for the commonwealth or the defendant were telling the truth is for the jury to determine [Lewis v. Com., 224 Ky. 502, 6 S. W. (2d) 502; Mullins v. Com., 230 Ky. 624, 20 S. W. (2d) 442; Nelson v. Com., 232 Ky. 568, 24 S. W. (2d) 276]. It has been so often stated by this court that a reversal will be granted on the ground of insufficiency of the evidence, when, and only when, the verdict is palpably against the evidence, it would seem unnecessary to cite authorities to sustain it. However, see Cowan v. Com., 229 Ky. 168, 16 S. W. (2d) 766; Hall v. Com., 229 Ky. 646, 17 S. W. (2d) 751; Jones v. Com., 230 Ky. 24, 18 S. W. (2d) 287; Miller v. Com., 231 Ky. 527, 21 S. W. (2d) 840; Duggins v. Com., 217 Ky. 688, 290 S. W. 514. The record showing no errors prejudicial to the substantial rights of the accused, or that he has been deprived of a fair and impartial trial, this court will not reverse a verdict of the jury solely on the ground it is flagrantly against the evidence, unless the verdict shocks the conscience. Begley v. Com., 200 Ky. 563, 255 S. W. 147; Ross v. Com., 202 Ky. 204, 259 S. W. 50; Burchett v. Com., 204 Ky. 454, 264 S. W. 1066; Moore v. Com., 223 Ky. 128, 3 S. W. (2d) 190."

The court in the instant case not only gave the proper instruction covering the evidence as to the defendant's commission of the crime with which charged

of maliciously shooting at and wounding, but further gave the instruction covering the lesser offense described in section 1242 of the Statutes as to shooting and stabbing in sudden affray, which is a lesser degree of the offense mentioned in section 1166, for which the accused was indicted. Also a proper instruction was given by the court upon the defendant's right of self-defense.

The appellant contends that the commonwealth failed to prove its case beyond a reasonable doubt against the defendant because it is testified by its own witness that the appellant and he began to fire at each other at about the same time. However, it is to be noted that the evidence of the prosecuting witness is to the effect that, with this background of bad feeling between the appellant and the witness Fairchild, caused by appellant's suspected wrongs done him in pursuing and persisting in what he regarded as an objectionable relationship with his wife, and because of the further recent trouble between them occurring on the Sunday before, wherein the witness testified that the appellant had drawn a gun on him when he attempted to talk with his wife and had ordered or shoved him away from her, and appellant's own statement upon the occasion of this, their final, difficulty that he had driven almost to Fairchild's home but did not go to his house on account of his belief that Fairchild was then sore at him because of his drawing a gun on him the Sunday before, he had yet armed himself and driven down to the point on the highway where Fairchild must pass to reach his home and had there turned around and parked his car where he might face the expected coming of Fairchild, whom he and Blanton had just previously passed on the road, and that he did there await his coming, and that, when witness while thus en route home did reach the car parked in the highway where he sat, the appellant first drew his gun on him, whereupon witness drew his, and they each began firing about the same time.

The jury was not required to believe appellant's statement that Fairchild first fired into the car some three or four times before he drew his gun or that he only then returned the fire or that appellant then drew his gun only for the purpose of his self-defense. Under the evidence as given by the prosecuting witness, the jury was authorized to believe witness' statement that the

appellant with Blanton had followed Fairchild down to this point in the road, where he awaited his coming for the purpose of shooting him and then shot him. The jury saw and heard these two witnesses; they also were afforded an opportunity to consider their manner and deportment while on the stand and judge of their truthfulness while so testifying. They heard their story of how animosity and hate, and perhaps a motive and purpose to destroy, had arisen between them over Fairchild's wife. From this account and history of the breach in the prior friendship between the parties, the jury may well have believed that the appellant was the aggressor in the fight and had purposely sought and chosen this place along the highway at which to give battle to Earl Fairchild, whom it is admitted he then and there shot and severely wounded. It is undisputed abstract law that the aggressor in a fight cannot claim self-defense, and, if the appellant by his own wrongful acts towards Earl Fairchild made a danger to himself, necessary or excusable upon the part of the other, he is not entitled to rely upon self-defense. "One cannot make a threatening demonstration and then shelter from the storm he has purposely raised under the shield of self-defense. Harris v. Com., 140 Ky. 41, 130 S. W. 801." McCarty v. Com., 244 Ky. 413, 51 S. W. (2d) 249, 250. And further was it said in the last-named case:

"If an accused by acts or words brings on a difficulty with the intent to kill or to injure seriously his adversary, on the immediate occasion of the killing, he may be deprived of his right to rely upon self-defense. Johnson v. Com., 94 Ky. 578, 23 S. W. 507, 15 Ky. Law Rep. 281; Hall v. Com., 207 Ky. 794, 270 S. W. 35; Com. v. Ashcraft, 224 Ky. 203, 5 S. W. (2d) 1067.''

We are of the opinion that the jury under the evidence before it as above summarized was fully warranted in believing therefrom that the appellant had chosen this position along the highway with the intent to maliciously shoot at and wound his former friend, Earl Fairchild, when he passed by on his way home, and that upon the latter's approaching appellant he was the first to draw his gun to execute his malicious plan, and, if they so believed, the fact that Fairchild did also then draw his gun and return the fire did not entitle the

appellant acquittal under color of the right of self-defense for his shooting of Fairchild.

Wherefore, the jury having found upon ample evidence before it the appellant guilty, and the court perceiving, upon the whole case, no errors prejudicial to the substantial rights of the accused, but that he has had a fair and impartial trial, it will not reverse the verdict of the jury solely on the ground that it is against the evidence, unless it be so flagrantly against it that the verdict shocks the conscience. Ross v. Commonwealth, 202 Ky. 204, 259 S. W. 50; Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190.

On the whole case the court is unable to say that the verdict is thus flagrantly, if at all, against the evidence; therefore the judgment is affirmed.